IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. PRICE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DREQUAN V. PRICE, APPELLANT.

Filed September 24, 2019.    No. A-19-032.

Appeal from the District Court for Douglas County: GARY B. RANDALL, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, Cindy A. Tate, and Ann O. Hayden for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

The Douglas County District Court accepted Drequan V. Price's no contest pleas to first degree sexual assault and burglary. Price was sentenced to consecutive terms of 30 to 40 years' imprisonment on his first degree sexual assault conviction, and 15 to 20 years' imprisonment on his burglary conviction. On appeal, he challenges the district court's denial of a continuance to allow him to obtain a new presentence investigation report (PSR), and he claims his sentences are excessive. We affirm.

## II. BACKGROUND

In May 2018, the State filed an information, charging Price with one count each of sexual assault in the first degree, a Class II felony; robbery, a Class II felony; and attempted escape, a Class IV felony. A plea of not guilty was entered. During a plea hearing in October 2018, at the

State's request, the district court granted the State leave to file an amended information, which charged Price with one count of sexual assault in the first degree, a Class II felony, and one count of burglary, a Class IIA felony. The State filed the amended information. Price waived the "reading and notice" of the amended information, and he entered pleas of no contest to each count.

The State provided the following factual basis:

On April 17th of 2018, the victim of this case, [identified by first and last name], was alone in her residence. Shortly after she went to bed, a man in black clothes and a mask came into her bedroom. When she began to scream, the man put his hands over her eyes and around her neck. She attempted to fight but the individual forced her to perform oral sex on him and subjected her to penile/vaginal penetration. The man then fled taking her phone.

She immediately reported to the Omaha Police Department and had a sexual assault kit taken at UNMC. She also suffered visible injury as a result of this attack. Officers were eventually able to locate her phone in the sewer using Verizon and Google info. Officers were able to follow the path of her phone and identify locations where it had been. Surveillance video . . . showed a vehicle in the area where her phone was dumped. Officers also located surveillance video at [a store] at the time that the victim's phone was there. The video showed . . . Price[] driving that same car at that time. Verizon information also showed that her phone had been in the area of [Price's] residence that night, as well.

DNA testing was done, and the test of the external genital swabs from the victim's sexual assault kit yielded a sperm fraction. . . . Price[] expressed a profile within the minor contributor mixture of that sperm fraction indicating that he was -- the stats . . . were 1 in 2.35 trillion chance that it matched his sperm [sic].

This all occurred in Douglas County.

The district court found beyond a reasonable doubt that Price freely, knowingly, intelligently, and voluntarily entered his pleas and that there was a factual basis for them. It allowed Price to withdraw his pleas of not guilty (to the original information) and accepted Price's pleas of no contest to the counts in the amended information. Price was found guilty of both counts.

During the sentencing hearing in December 2018, the district court asked Price's counsel if there was any legal reason why sentence should not be imposed. Price's counsel responded, "Yes, Your Honor." Counsel then stated, "At this time, the defense would make a motion to request a continuance, specifically for the purpose of requesting that another [PSR] be completed by a different probation officer." Counsel then argued the following. The completed PSR contained "clear bias and a number of inaccuracies." Some information, all negative, was in bold type for emphasis but did not highlight any of Price's "accomplishments," and this showed "complete bias" of the probation officer who completed the PSR. Statements about a dismissed criminal charge under a section about "leisure and recreation" were out of context and intended to reemphasize the charge. Price's statement of apology noted in the PSR was contrasted with the probation officer's statements regarding whether Price took responsibility for committing the offense.

Price's counsel argued that Price "specifically voiced his concerns" to the probation officer about a "previous [PSR] being inaccurate and that his words were mixed up." An exhibit of an

"e-mail chain," was received into evidence. It showed that defense counsel stated she would like to be notified of the date and time of the presentence interview for the instant case and would like to be present during the interview; and an employee of the Nebraska State Probation Office indicated he would notify defense counsel of the date of that interview. Price's counsel denied receiving such notification. She argued there was a "strong indication" that information from conversations between Price and the probation officer who did the PSR was not "accurately relayed."

The State objected to a continuance of sentencing. It was sure the district court was "more than capable of setting aside what's been bolded or set out as a probation officer's opinion versus fact." Price's counsel clarified that her concern was that the "information and the inaccuracies" in the PSR "could very well be contained within the scoring," impacting the overall Level of Service/Case Management Inventory (LS/CMI) score, which she expected the court would take into consideration.

The district court acknowledged the written portion of the PSR "may" call into question the ultimate LS/CMI score, but said: "I would point out that with regard to the penalties, even available, the plea agreement that he received and took the benefit of, I have to question if [Price], in fact, didn't go into the Presentence Investigation prior to being interviewed by anyone with that attitude." The district court then read from a section labeled "**PROBATION OFFICER'S NOTES**" (Notes), pausing at one point to state Price was "objecting to that one [a previous presentence investigation], as well"; the Notes as set forth in the PSR are:

> Mr. Price was adamant that the Officer who completed the previous Presentence Investigation lied, made up stories, and mixed his words up. Therefore, [he] was very adamant that this officer did not twist his words around, when quoting the information during the Presentence Investigation. It appeared that [Price] agreed to complete the presentence investigation interview only to display the appearance of compliance with the Court, but he clearly had not [sic] intentions on [sic] providing detailed accurate and honest information.

(Emphasis omitted.) Price's counsel objected and asked that the Notes be stricken as speculative. Defense counsel argued that it was not the probation officer's job to opine about whether Price was "feigning." The district court denied the continuance. Sentencing proceeded.

The district court sentenced Price to 30 to 40 years' imprisonment for his conviction of first degree sexual assault, to run consecutively to a sentence of 15 to 20 years' imprisonment for his conviction of burglary. He was given credit for 234 days' time served. Price was ordered to register as a sex offender.

Price appeals.

### III. ASSIGNMENTS OF ERROR

Price claims, restated, that the district court abused its discretion by (1) denying his motion for continuance to allow him to obtain a new PSR and (2) imposing excessive sentences.

## IV. STANDARD OF REVIEW

A decision whether to grant a continuance in a criminal case is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Baxter*, 295 Neb. 496, 888 N.W.2d 726 (2017).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018).

## V. ANALYSIS

### 1. MOTION FOR CONTINUANCE

Price claims the district court erred by denying his motion to continue sentencing to allow preparation of a "second and more reliable" PSR. Brief for appellant at 7. He argues that the PSR contained "misleading information," depriving him of a just result in sentencing, *id.*, and that the probation officer "neglected his role as a neutral fact-finder working on behalf of the court and instead became an arm of the prosecution," *id.* at 9.

Neb. Rev. Stat. § 29-1206 (Reissue 2016) mandates, in part, that the district court shall grant a continuance in a criminal case only upon a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecution or defense, but also the public interest in the prompt disposition of the case. A court does not abuse its discretion in denying a continuance unless it clearly appears that the party seeking the continuance suffered prejudice because of that denial. See *State v. Baxter, supra.*

Unless it is impractical to do so, when an offender has been convicted of a felony other than murder in the first degree, the court shall not impose sentence without first ordering a presentence investigation of the offender and according due consideration to a written report of such investigation. Neb. Rev. Stat. § 29-2261(1) (Cum. Supp. 2018). Section 29-2261(3) provides, in relevant part, that the presentence investigation and report shall include, when available, an "analysis" of various information (i.e., circumstances attending commission of crime, offender's history of delinquency or criminality, physical and mental condition, family situation and background, economic status, education, occupation, and personal habits), including "any other matters that the probation officer deems relevant or the court directs to be included."

Specifically, Price claims bias is apparent in the PSR's (1) bold type of some negative information, (2) inclusion of "misleading information" in discussing his criminal history under the "Leisure/Recreation" section, and (3) inclusion of information that "directly contradicted" his "own statements in taking responsibility for his crime." Brief for appellant at 10.

### (a) Bold Type Information

As Price points out, the following are in bold type in the PSR: the listing of one 2015 conviction of attempted robbery as amended from charge of robbery (sentenced to 2 to 3 years' imprisonment), one 2017 charge of first degree sexual assault (dismissed by court), and one 2017 charge of robbery (declined); the Notes; and the phrase "**Regarding institutional misconduct**" when talking about Price's misconduct reports in the criminal history domain of the LS/CMI. Although not cited in his appellate brief, the PSR also has bold type in the alcohol/drug problem

domain of the LS/CMI, specifically the portions discussing Price's scores on the Substance Abuse Questionnaire (SAQ) and its conclusions about those scores, and general information about how the Specialized Substance Abuse Supervision (SSAS) had been expanded to include "*all felony*" offenders who meet a stated criteria.

Price argues that placing in bold type a past charge that did not result in a conviction unfairly emphasized it. However, regardless of the font style or boldfacing in which that charge was reported, such a charge was an appropriate consideration for the district court to weigh in determining sentencing. Even if arrests do not lead to a conviction of crime, they are "no less proper to be considered in arriving at the sentence to be imposed." *State v. Rose*, 183 Neb. 809, 812, 164 N.W.2d 646, 649 (1969). Price complains that the Notes contained the probation officer's own opinion, but the Notes qualify as an appropriate "analysis" of "other matters" deemed "relevant" regarding the probation officer's perception of Price's motivation to complete the PSR and his mindset during the interview. See § 29-2261(3). The law invests a trial judge with a wide discretion as to the sources and types of information used to assist him or her in determining the sentence to be imposed within statutory limits. See *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

Price believes use of bold type unfairly emphasized negative aspects of his life, but, notably, does not dispute the veracity or accuracy of any of that information other than describing the Notes as the probation officer's opinion. The use of a different font style or boldfacing for only some information does not necessarily mean it caused the district court to impose harsher sentences than it otherwise would have imposed. And "there are many other negative details and facts about Price that are not bolded throughout the [PSR]." Brief for appellee at 12. There is no evidence that the probation officer's emphasis on various matters in the PSR was driven by bias or that the court considered information set in bold type to the exclusion of positive information about Price in the PSR. Price cannot show clear prejudice from his denied motion to continue on this point.

(b) Discussion in Leisure and Recreation Section

Price asserts that discussion of his criminal history did not belong in the PSR section on leisure and recreation. The PSR shows Price was assessed at a "high" risk in the leisure/recreation domain of the LS/CMI. That section details that Price stated he participated in a basketball league through church in the past but had not done so for a few years; Price grew up attending church; and in Price's free time, he enjoyed playing basketball and hanging out with family. The section also stated that Price is "not a member of any formal organizations or community organized activities at this time and has been incarcerated on these [present] charges since April 23, 2018. He spent four months incarcerated in 2017 from August until December 12, 2017 on a previous Sexual Assault charge that was eventually dismissed."

While Price claims that discussion of criminal charges was an effort to negatively influence his sentencing, we agree with the State that it appears the probation officer was "merely describing the current state of Price's leisure and recreation activities." Brief for appellee at 13. The implication from the PSR is that incarceration limited Price's activities. Price fails to demonstrate clear prejudice from his denied motion to continue on this claim.

(c) Contradictory Reports

The PSR contains Price's statement in which he said he was "truley [sic] sorry for what [he] did," and that if the court gave him a "second chance" he would prove that he was "changed for the better." He said he was not in his "right state of mind," was "going through a rough stage," and "didn't know what [he] was doing." He then said, "[N]ow I know what I did was something really bad." He asked, "[P]lease don't judge me on the crime but for the person I really am." On appeal, Price claims his statement was intended to convey that "he had taken responsibility for his crimes and hoped to reform his behaviors in the future." Brief for appellant at 11. He alleges two statements of the probation officer on that matter were unsupported opinions and irreconcilable with Price's own statement.

The relevant portions of the probation officer's reports in the PSR, encompassing the two sentences which Price disputes, are as follows. First, from the Procriminal Attitude/Orientation section:

> Mr. Price appeared to accept very little responsibility for this case. He simply claimed he doesn't remember any of it. He states he must have done it because they claim they found his DNA at the scene and on the victim but states that, because he was in a state of blackout from his bipolar disorder and schizophrenia, he doesn't remember any of it.
>
> The defendant simply stated, "I got remorse."
>
> . . . .
>
> Mr. Price minimized his involvement in this offense. . . .

Second, from the Summary/Recommendations section, "Price does not accept responsibility for his behaviors." We also note that in the Special Responsivity Consideration section, the probation officer stated that Price "completely denies committing this offense. [He] is viewed being in the pre-contemplative stage of change as a result of his denial of this offense."

Price does not dispute the truth of his reported statements which served as support for the probation officer's deduction that he accepted "very little responsibility." The final conclusion that Price "does not accept responsibility for his behaviors" may be supported with the conclusion under the procriminal attitude/orientation section as well as other examples of his behavior in the past detailed in education-related records, institutional misconduct records, assessments, or court or police files made part of the PSR. Even in light of Price's statement that he was "sorry for what [he] did," the probation officer had other information from which to conclude Price minimized his involvement in the present offense. It is not contradictory if Price were both apologetic for the offense while still unwilling to accept most or all responsibility for his offense. The probation officer's conclusions properly fall into the analysis of relevant matters described under § 29-2261(3). As the State reflects, the nature of any presentence investigation analysis requires "estimations, observations, and characterizations" of the probation officer, especially here where the PSR's attachments total over 650 pages of pertinent information to sentencing. Brief for appellee at 16.

Moreover, Price's own statement was attached to the PSR in its original handwritten and signed form. And Price took the opportunity during the sentencing hearing to tell the district court:

"I just want to say that I'm sorry and ask can you be lenient on me with the sentence. That's it." While Price disagrees with the probation officer's opinions regarding acceptance of responsibility, the district court was nevertheless also provided with Price's own statements of apologies and reactions to his offense. Regardless of the probation officer's analysis in the PSR, the district court was not bound by recommendations of the probation officer. See *State v. Crowdell*, 241 Neb. 216, 487 N.W.2d 273 (1992). The district court indicated its awareness of the same during the plea hearing when it told Price, "[I]t's in my discretion to determine what an appropriate sentence might be." There is no evidence on the face of the PSR that the probation officer's conclusions were unsupported or relayed to improperly bias Price. Nor is there evidence that Price's sentencing was clearly prejudiced by the denial of his motion to continue on these grounds.

### (d) No Abuse of Discretion

We note that Price was not pleased with the other probation officer who conducted his prior presentence investigation and now complains about the work of the probation officer who put together the current PSR. Price's claims are not supported by the record. A continuance granted in light of Price's recurring displeasure with different probation officers for unsupported reasons would have cut against interests relevant to the decision of whether to grant a continuance. See *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011) (potentially never-ending continuances would undermine interest in prompt disposition of case).

### 2. EXCESSIVE SENTENCE

Price claims his sentences are excessive. He was convicted of sexual assault in the first degree, a Class II felony, under Neb. Rev. Stat. § 28-319 (Reissue 2016), and burglary, a Class IIA felony, under Neb. Rev. Stat. § 28-507 (Reissue 2016). Class II felonies are punishable by 1 to 50 years' imprisonment, and Class IIA felonies are punishable by up to 20 years' imprisonment (there is no minimum penalty). See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2018). Price was sentenced to consecutive terms of 30 to 40 years' imprisonment on his first degree sexual assault conviction and 15 to 20 years' imprisonment on his burglary conviction. He was given 234 days' credit for time served. His sentences are within the statutory ranges.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively. *Id.*

The PSR shows Price was 21 years old at the time of sentencing. He was single and had no dependents (although his girlfriend of several years was pregnant). Price had a high school diploma. The PSR noted Price had "numerous disciplinary problems while in school settings and

was kicked out [of] multiple schools." He was unemployed at the time of the PSR due to his incarceration. Prior to his arrest, he had been employed by a pharmaceutical company for 2 months. Prior to that, he worked for a linen company for 6 months.

The PSR reflects Price's juvenile record, which reveals various dispositions (including dismissals) for assaults and an attempted burglary. As an adult, his criminal history includes a 2015 conviction for possession of marijuana - less than an ounce (fine); a 2015 conviction for attempted robbery (2 to 3 years' imprisonment, released on parole in 2016); and an arrest in 2017, for first degree sexual assault (dismissed by the court in 2018) and robbery (declined in 2017). The PSR also states that Price received institutional misconduct reports for "failure to comply" (2015), "Assault Inmate" (2018), and illegal drug use (2018).

The probation officer attached the following to the PSR: victim statements, Price's statement, Price's testing results from the interview, a "DNA" report, Nebraska Department of Corrections Classification Studies, education-related records, Price's PSR from 2015, juvenile records and an evaluation from 2014, police reports, and court information.

Price's 2015 attempted robbery conviction involved facts in which he appeared uninvited in a woman's home and, at his demand, the woman handed over a sum of her money to him. The PSR for that conviction included the following note: "[Price] states he would 'case' places that had the front door open and would look in the windows to see if he saw anyone home." At that time, Price was said to attribute his criminal behaviors to his marijuana use and anger issues over the years. In the current PSR, the probation officer stated that police reports from Price's 2017 arrest for first degree sexual assault were attached, and the probation officer noted the circumstances surrounding that case (which was dismissed) were "eerily similar" to the current case. With regard to the current convictions, Price (wearing a mask) entered a woman's home, put his hands over her eyes and around her neck, forced her to perform oral sex on him and subjected her to penile/vaginal penetration, and then took her phone when he fled.

Price personally claimed he was diagnosed with bipolar disorder and schizophrenia; the PSR noted Price said he received those diagnoses about 10 years prior, which the probation officer said "would have coincided with the psychological evaluation in 2007 [which] did not mention bipolar disorder or schizophrenia"; that early evaluation revealed that Price had been diagnosed with "ADHD," a conduct disorder, and possible depression. In the defense's sentencing memo (attached to PSR), it was claimed (without citing reference) that at age 19 "an evaluation" indicated Price suffered from "atypical schizophrenia." At the time of his presentence interview, Price stated he felt like he needed medication since he has been in jail because he was "'down and depressed.'" Although he was not taking any medication prior to going to jail for the current offenses, he was taking two types of medications that were prescribed to him since his incarceration.

On a Simple Screening Instrument (SSI), Price scored low risk for chemical abuse; the SSI was based on Price's self-reported answers. On the SAQ, Price scored in the problem risk range for categories of violence, antisocial, and aggressiveness, and his scores in alcohol and drug categories were in the medium risk range. His SAQ drug scale indicated no evident established pattern of drug use or abuse but that there may be an emerging tendency toward such use or abuse. Price indicated that he experimented with marijuana once at age 16 and had not used it since (an answer conflicting with past information on the topic in different sources attached to PSR). Price

stated he had never been drunk or intoxicated. The probation officer reported, "Price denied he was under the influence of alcohol or drugs at the time of this offense but does claim that he 'blacked out' and does not remember what happened. He blames the 'blackouts' on his diagnosis of bipolar disorder and schizophrenia." Two different sexual risk assessments were "unable to be scored because [Price] provided very minimal information, and what he did provide appeared to minimize and deny his sexual history." The probation officer noted Price was being "quite defiant" at the point of the interview concerning Price's sexual history.

On the overall LS/CMI, Price scored as a high risk to the community and to recidivate. Individual scores reflected: "very high risk range" for domains of procriminal attitude/orientation and antisocial pattern; "high risk range" for domains of criminal history, education/employment, leisure/recreation, and companions; and "medium risk range" for the family/marital domain. The probation officer opined that Price: had "weak ties" to a "conventional setting such as home/family and work history," had a history of "repeated disregard for rules in school settings and laws in society," had the "potential for future assaultive behavior," and was a "predator and a danger to society." The PSR recommended a lengthy period of incarceration "to promote accountability and to protect society from any further actions by [Price]."

During the sentencing hearing, Price's counsel argued there was a "flat affect" about Price due to "the type of medications he's on and his mental health history." Defense counsel referred to the defense's sentencing memo (attached to PSR), which contained "the sum and substance of our argument." In the memo, there was a request to take into consideration Price's acceptance of responsibility and remorse for his actions and his age, arguing that his brain was not fully developed and would continue to mature until at least age 25. The memo also stated that Price was "now properly medicated." And the memo alleged that the State dismissed the 2017 sexual assault charge because of a "faulty identification made by the victim." Finally, the defense asked for sentencing of "a bottom number" and for sentences to run concurrently.

As noted previously in this opinion, Price personally addressed the district court, stating, "I just want to say that I'm sorry and ask can you be lenient on me with the sentence. That's it."

The State called attention to the victim's impact statement, which statement noted the traumatic effects of the sexual assault and the impact of the offense on her perceptions of safety and her livelihood. The State, referring to Price's 2015 attempted robbery conviction, argued "it shows an escalation in his behavior in the amount of violence that he is capable of." The State believed a "substantial sentence" was warranted and asked that "any sentences" run consecutively.

On appeal, Price argues that the district court failed to give adequate consideration to his age, experience, mentality, social background, and education in imposing his sentences. But the record supports that there was sufficient information about those factors within the PSR and/or its attachments available for the district court to consider. Further, the record refutes that the district court did not consider those factors.

During the sentencing hearing, the district court stated that in determining an appropriate sentence, it reviewed the court and probation files, heard the "evidence" from the State, and information offered by defense counsel and by the victim. It considered Price's "age, [his] education, [his] mentality, [his] experience, [his] social and cultural background, [his] past criminal record, the motivation for the offense, and the nature of the offense, and the presence of

violence." The record does not show that the district court considered inappropriate matters. As far as how the district court weighed each of the factors it considered, the appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. See *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018). We conclude the district court did not abuse its discretion in sentencing Price to consecutive terms of 30 to 40 years' imprisonment on his first degree sexual assault conviction and 15 to 20 years' imprisonment on his burglary conviction.

## VI. CONCLUSION

We affirm Price's convictions and sentences.

AFFIRMED.