Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/05/2018 08:12 AM CDT

State of Nebraska, appellee, v.
John R. Leahy III, appellant.
___ N.W.2d ___

Filed October 5, 2018.    No. S-17-1047.

1. **Sentences: Appeal and Error.** Whether a defendant is entitled to credit for time served and in what amount are questions of law, subject to appellate review independent of the lower court.

2. ____: ____. An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

3. ____: ____. Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

4. **Sentences.** In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

5. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

6. ____. Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively.

7. **Judges: Plea Bargains: Sentences.** A judge is not bound to give a defendant the sentence recommended by a prosecutor under a plea agreement.

Appeal from the District Court for Hitchcock County: David W. Urbom, Judge. Affirmed.

Richard Calkins, of Calkins Law Office, for appellant.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

Heavican, C.J., Cassel, Stacy, Funke, and Papik, JJ., and Bishop and Welch, Judges.

Papik, J.

John R. Leahy III was serving a criminal sentence in Colorado when he was extradited to Nebraska to face charges here. Approximately 19 months later, Colorado authorities granted Leahy parole. After he was convicted of kidnapping and manslaughter in Nebraska, the district court determined he was not entitled to credit for time served prior to his parole in Colorado. Leahy now appeals the denial of credit for time served, the admission of an exhibit the district court received in the course of determining whether and to what extent he was entitled to credit for time served, and the consecutive nature of his sentences. Having found no reversible error in any aspect of the district court's sentencing of Leahy, we affirm.

## BACKGROUND

*Charges Against Leahy.*

In June 2015, the State filed an information charging Leahy with first degree murder for killing Austin Wright in the perpetration of a kidnapping or attempted kidnapping. Pursuant to a plea agreement, Leahy pleaded no contest to an amended information charging him with kidnapping and manslaughter. In accordance with the plea agreement, Leahy also pleaded no contest to an amended information in a separate case, charging him with possession of methamphetamine with intent to deliver. As agreed, the State recommended concurrent sentences for all charges in both cases.

According to the factual basis supplied by the State at the plea hearing, Leahy and Wright were acquaintances, and Wright stayed briefly at Leahy's residence beginning February 26, 2014. On March 7, Wright's mother contacted Leahy. She had not seen Wright for several days and asked Leahy where he was. Leahy told Wright's mother that Wright had shown up high "on something" at Leahy's residence and that Wright could not stay there anymore. On March 8, Leahy told Wright's mother that he had dropped Wright off near a motel in McCook, Nebraska, that day. On March 9, Wright's mother filed a missing person's report.

On March 13 and 20, 2014, police interviewed Leahy. At that time, Leahy told officers that he had dropped Wright off near a motel in McCook. A search of Leahy's residence on April 9 uncovered 26.82 grams of methamphetamine and a cell phone video of Leahy and Wright arguing about debts that Wright owed Leahy for drugs, among other things. The video was date stamped March 6.

The day after the search, Leahy asked to talk to police. He admitted that under the pretense of going to McCook, he and another passenger took Wright in his car, that he forced Wright to cover his head with a sweatshirt, that he drove the car on a circuitous route intended to confuse Wright, and that he left Wright alone in an isolated rural area with no means of transportation. Before leaving, Leahy pointed Wright in the general direction of the nearest town, 8 miles away. The nearest inhabited dwelling was over 1½ miles in nearly the opposite direction.

After Leahy recounted those details, officers went to the area Leahy said he had left Wright. Nearby, officers found Wright's naked body and some of his clothing. Authorities identified Wright using dental records, and an autopsy and forensic testing showed that he died of hypothermia sometime between early March 2014 and the date of discovery on April 11.

The district court accepted Leahy's pleas of no contest.

*Initial Sentencing Hearing.*

After the district court accepted Leahy's pleas, it continued sentencing for preparation of a presentence investigation report (PSR). At the subsequent sentencing hearing, a dispute arose regarding the time-served calculation in the PSR. Leahy was serving a 3-year sentence in Colorado when he was charged in Nebraska for the current offenses. He was transported to Nebraska to await trial according to the interstate Agreement on Detainers, see Neb. Rev. Stat. § 29-759 (Reissue 2016), and began his incarceration in Nebraska on May 7, 2015. While still detained in Nebraska, Leahy was paroled by the State of Colorado on November 28, 2016. The PSR as initially prepared is not in the record, but arguments by counsel at the hearing suggest that it indicated Leahy was entitled to credit for all of the time he was detained in Nebraska prior to his convictions and sentencing.

At the hearing, the State contended that Leahy should not receive credit for time he was detained in Nebraska prior to Colorado's grant of parole on November 28, 2016. Leahy's counsel did not dispute that Leahy was paroled by Colorado on November 28, but argued that Leahy should receive credit for any time he spent incarcerated in Nebraska awaiting trial on Nebraska charges. The district court scheduled another hearing to address credit for time served.

*Additional Hearing Addressing*
*Credit for Time Served.*

At the next hearing, the State offered exhibit 51, which included a signed cover letter from a technician at the Colorado Department of Corrections, "Time/Release Operations." The letter stated that Leahy was paroled from the Colorado Department of Corrections on November 28, 2016.

Leahy's counsel objected on foundation and hearsay, noting that he had not had the opportunity to question the author of the document. Leahy's counsel further argued that Leahy may have completed his Colorado sentence earlier if he had

not been transported to Nebraska but that there was no way to know for certain, because no one was present to explain exhibit 51. The district court ultimately overruled Leahy's objection and received exhibit 51.

In a subsequent written order, the district court ruled that Leahy would not receive credit toward his Nebraska sentences for the time beginning May 7, 2015, and ending November 28, 2016, because his Colorado sentence was still running during that period. However, the district court did allow Leahy credit for time he served after he was paroled by the Colorado Department of Corrections.

*Sentencing Order.*

Almost 2 weeks after issuing its written order on the issue of time served, the district court held a sentencing hearing. At the hearing, the parties presented arguments, including aggravating and mitigating information from the PSR. The PSR reflected that Leahy was 22 years old at the time of the current offenses, that he was single with no children, that he left school after completing the 10th grade, and that at the time of his arrest for the current offenses, he had been employed at a drilling company full time for 7 or 8 months.

According to the PSR, Leahy was diagnosed with bipolar disorder as a youth but has never treated the condition with medication. Leahy reported that his mental health is good, though he admitted attempting suicide several times after his mother died. Leahy had used marijuana daily since age 12. Beginning at age 14, Leahy used methamphetamine intermittently until 2013, when he began using it every day. Leahy admitted to having a problem with drugs and to selling illegal drugs.

Leahy's criminal history began when he was convicted of pharmaceutical drug possession at age 14. Subsequently, Leahy was convicted of assault, minor in possession, failure to appear, two felony drug possession charges, and false reporting. Regarding Wright, Leahy reported that he felt

"horrible" and never anticipated that Wright would die. He stated that he believed he deserved to "serve time just for what he did wrong, but not made an example of." He expressed an intent to take advantage of educational opportunities during his incarceration.

At the sentencing hearing, Leahy apologized for his actions. He admitted that he initially lied about Wright's whereabouts, but he asked the district court to consider that he had since been honest and accepted responsibility through his no contest pleas.

Before pronouncing the sentences, the district court explicitly stated that it had considered all of the customary factors enumerated in sentencing. The district court proceeded to reference information it obtained from the PSR. It remarked specifically on Leahy's age, education, employment, criminal history, and use of drugs. Noting Leahy's role in covering Wright's head and taking him on a circuitous route in Leahy's car before leaving him alone in a rural area, the district court observed that but for Leahy's actions, Wright would still be alive. The district court stated that lesser sentences than the ones to be imposed would depreciate the seriousness of Leahy's crimes and promote disrespect for the law.

The district court sentenced Leahy to 24 to 30 years' imprisonment for kidnapping and 18 to 20 years' imprisonment for manslaughter. It ordered the sentences to run consecutively to each other and to the sentence of 8 to 10 years' imprisonment that Leahy received in a separate case for the conviction of possession of methamphetamine with intent to deliver.

## ASSIGNMENTS OF ERROR

Leahy assigns, rephrased, that the district court erred (1) in denying him credit for the time served in the Hitchcock County jail before November 28, 2016; (2) in receiving exhibit 51 over his objection; and (3) in imposing excessive sentences by sentencing him to consecutive terms of imprisonment for the various convictions.

## STANDARD OF REVIEW

[1] Whether a defendant is entitled to credit for time served and in what amount are questions of law, subject to appellate review independent of the lower court. See *State v. Wills*, 285 Neb. 260, 826 N.W.2d 581 (2013).

[2] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Russell*, 299 Neb. 483, 908 N.W.2d 669 (2018).

## ANALYSIS

*Credit for Time Served.*

Leahy contends that he should have received credit for all the time he spent detained in Nebraska awaiting trial and sentencing on his Nebraska charges. Leahy argues that because he was detained in a Nebraska jail awaiting the disposition of the Nebraska charges, that entire time should be credited to his Nebraska sentences.

Leahy's argument, however, fails to account for the statute that governs whether and to what extent he is entitled to credit for time served or cases interpreting and applying that statute. Neb. Rev. Stat. § 83-1,106(1) (Reissue 2014) states:

> Credit against the maximum term and any minimum term shall be given to an offender for time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. This shall specifically include, but shall not be limited to, time spent in custody prior to trial, during trial, pending sentence, pending the resolution of an appeal, and prior to delivery of the offender to the custody of the Department of Correctional Services, the county board of corrections, or, in counties which do not have a county board of corrections, the county sheriff.

(Emphasis supplied.)

In prior cases interpreting and applying § 83-1,106(1), it has been held that if a defendant is serving a sentence on a

conviction for one offense while awaiting trial and sentencing on an unrelated offense, he or she is not entitled to credit for time served on the sentence for the unrelated offense. For example, in *State v. Baker*, 250 Neb. 896, 553 N.W.2d 464 (1996), a defendant was sentenced to a term of imprisonment for being a felon in possession of a firearm and, on that same day, charged with other offenses arising out of an unrelated murder. Even though the defendant was detained while awaiting trial and sentencing on the charges arising out of the murder, we held that he was not entitled to credit on his eventual sentence for the charges arising out of the murder so long as he was continuing to serve his sentence for being a felon in possession of a firearm. *Id.*

Similarly, in *State v. McLeaney*, 6 Neb. App. 807, 578 N.W.2d 68 (1998), in a case much like this one, the Nebraska Court of Appeals held that an individual who was serving a Missouri sentence and was transported to Nebraska to face charges was not entitled to credit for time spent awaiting trial and sentencing in Nebraska. The Court of Appeals cited *Baker* and explained that § 83-1,106(1) "provides for credit for the time the offender is forced to be in custody *as a result of the criminal charge for which sentence is imposed.*" *State v. McLeaney*, 6 Neb. App. at 810, 578 N.W.2d at 70 (emphasis in original). Because the defendant in *McLeaney* was in custody because of the sentence in Missouri, the Court of Appeals concluded he was not entitled to credit for time served. We have subsequently cited the Court of Appeals' opinion in *McLeaney* with approval. See *State v. Hunnel*, 290 Neb. 1039, 863 N.W.2d 442 (2015).

As *Baker* and *McLeaney* demonstrate, what matters in the credit for time served analysis is not whether Leahy was detained in Nebraska and awaiting trial and sentencing on Nebraska charges, but, rather, whether he was forced to be in custody *because of those charges*. As long as Leahy was serving a sentence on another conviction while awaiting trial and sentencing on the Nebraska charges, he was not forced to be

in custody because of the Nebraska charges and is thus not entitled to credit for time served on his Nebraska sentences under § 83-1,106(1).

On the question of whether Leahy was serving a sentence on another conviction while detained in Nebraska, there does not appear to be much of a dispute. Leahy concedes that he was serving a sentence in Colorado at the time he was transported to Nebraska to face charges here. Under Colorado law, Leahy would have continued to receive credit for time served on his Colorado sentence even while detained in Nebraska. Like Nebraska, Colorado has adopted the interstate Agreement on Detainers, which provides that time being served on a sentence continues to run while the prisoner is being made available for trial as required by the agreement. See Colo. Rev. Stat. Ann. § 24-60-501 (West 2015). See, also, *Pleasant v. Tihonovich*, 647 P.2d 236 (Colo. 1982) (holding prisoner serving Colorado sentence was entitled to credit for time he was in New Mexico pursuant to interstate Agreement on Detainers).

While Leahy does not dispute that he was earning credit on his Colorado sentence until being paroled, he does assert that he may have been granted parole earlier had he not been transported to Nebraska. Leahy appears to take the position that he should receive credit for time served for any days he was detained in Nebraska after the date that Colorado authorities *would have paroled him* had he remained there. Leahy, however, cannot direct us to anything in the credit for time served statutes that would require courts to engage in the type of counterfactual inquiry he envisions in order to calculate credit for time served. Indeed, we have said that the credit for time served to which a defendant is entitled is "an absolute and objective number that is established by the record." *State v. Clark*, 278 Neb. 557, 562, 772 N.W.2d 559, 563 (2009). The calculation of credit for time served would quickly lose any absolute and objective quality if sentencing courts were required to determine when a sentence would have ended as opposed to when it actually did.

Since Leahy was in custody because of his Colorado sentence up until he was paroled on November 28, 2016, the district court correctly denied him credit for time spent in custody prior to that date.

*Exhibit 51.*

Leahy also argues that the district court erred by receiving exhibit 51 in the course of one of the hearings regarding the credit for time served issue. Leahy objected to the exhibit at the hearing on foundation and hearsay grounds. On appeal, he argues that the exhibit should not have been admitted, because foundation was lacking and because its admission denied him his right to confrontation guaranteed by the Sixth Amendment to the U.S. Constitution.

Initially, we note that it is difficult to discern how the district court's receipt of exhibit 51 worked to Leahy's detriment. The only assertion in exhibit 51 that the court appeared to rely on was the fact that Leahy was paroled on November 28, 2016. Leahy, however, does not contest that he was paroled on this date. Moreover, if anything, the district court's receipt of information indicating the date of Leahy's parole *benefited* Leahy, because the district court granted Leahy credit for time served after he was paroled on his Colorado sentence.

In any event, Leahy's arguments fail to account for the fact that exhibit 51 was received in the sentencing phase of the case. At the time exhibit 51 was received, Leahy's pleas had already been accepted. The only thing left to be done at that point was to impose Leahy's sentences, and the district court received exhibit 51 at a hearing set for the purpose of determining whether Leahy would be entitled to credit for time served on that sentence.

We have held that the traditional rules of evidence are relaxed during the sentencing phase and that evidence may be presented as to any matter that the court deems relevant to the sentence. See *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011). Exhibit 51 related to whether and to

what extent Leahy was entitled to credit for time served and could thus be considered by the district court. In addition, even if we assume that Leahy's objection to exhibit 51 on hearsay grounds was sufficient to preserve his argument that consideration of exhibit 51 violated his right to confrontation, we have held that the right to confrontation is inapplicable to sentencing proceedings. See *State v. Galindo*, 278 Neb. 599, 774 N.W.2d 190 (2009). See, also, *U.S. v. Powell*, 650 F.3d 388 (4th Cir. 2011) (collecting cases from federal circuit courts holding that Confrontation Clause does not apply at sentencing). The district court did not err by receiving exhibit 51.

*Excessive Sentences.*

Finally, Leahy assigns that the district court erred in imposing excessive sentences. Leahy does not dispute that the sentences imposed were within statutory limits. Rather, he challenges the consecutive nature of his sentences. We conclude that the district court did not commit reversible error in ordering that Leahy's sentences be served consecutively.

[3-5] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Russell*, 299 Neb. 483, 908 N.W.2d 669 (2018). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and

circumstances surrounding the defendant's life. *State v. Steele*, 300 Neb. 617, 915 N.W.2d 560 (2018).

Leahy acknowledges that the district court expressly stated these considerations. However, he contends that the district court did not properly weigh the factors or fully consider them, especially as they apply to the decision to impose Leahy's sentences consecutively rather than concurrently. In particular, Leahy argues that the district court neglected to consider his mentality, the motivation for the offenses, and the degree of violence involved, which, he contends, all amounted to mitigating factors. We disagree with Leahy's characterization of the district court's analysis.

Our review of the record shows that the district court properly considered and applied the necessary sentencing factors. In sentencing Leahy, the district court reviewed the information, both aggravating and mitigating, in the PSR. It also heard detailed arguments from counsel. As noted, the district court specifically stated that it had considered all of the customary factors enumerated in sentencing. It then discussed specific facts pertaining to a majority of those factors. We do not find an abuse of discretion in the court's consideration of the sentencing factors.

[6,7] Nor do we find that the district court abused its discretion in making Leahy's sentences consecutive. Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively. *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018). Pursuant to the plea agreement, the State recommended that the district court impose concurrent sentences for Leahy's offenses. As Leahy concedes, however, a judge is not bound to give a defendant the sentence recommended by a prosecutor under a plea agreement. See *State v. Gonzalez-Faguaga*, 266 Neb. 72, 662 N.W.2d 581 (2003). And the district court specifically advised Leahy of this fact at the plea hearing. In light of the familiar sentencing factors set forth above and Leahy's role in Wright's death, we cannot say that

the district court abused its discretion in imposing consecutive sentences.

## CONCLUSION

We find no basis to reverse any aspect of Leahy's sentences. The district court correctly calculated the extent to which Leahy was entitled to credit for time served, did not err by receiving exhibit 51, and did not abuse its discretion by imposing consecutive sentences.

AFFIRMED.

MILLER-LERMAN and FREUDENBERG, JJ., not participating.