IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MCCOLLISTER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CALEB D. MCCOLLISTER, APPELLANT.

Filed September 24, 2019.    No. A-18-889.

Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Affirmed.

Michael J. Wilson, of Schaefer Shapiro, L.L.P., for appellant.

Douglas J. Peterson, Attorney General, Melissa R. Vincent, and Derek T. Bral, Senior Certified Law Student, for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Caleb D. McCollister entered a guilty plea to and was convicted of one count of driving under the influence of alcohol or drugs (fifth or subsequent offense) in the Sarpy County District Court. He was sentenced to 12 to 16 years' imprisonment, and his license was revoked for a period of 15 years. He appeals his conviction and sentence and claims his trial counsel was ineffective. We affirm.

## II. BACKGROUND

In May 2017, the State filed an information charging McCollister with one count each of driving under the influence of alcohol or drugs (fifth or subsequent offense), driving under revocation, violation of a stop sign, possession of marijuana (1 ounce or less) or synthetically produced cannabinoids, and possession of drug paraphernalia.

- 1 -

In July 2017, McCollister, by and through his attorney Mandy M. Gruhlkey of the Sarpy County Public Defender's Office (public defender's office), filed a "Motion to Suppress Statements." At the hearing on that motion in August, Gruhlkey represented McCollister. After evidence was adduced by each party, the district court overruled McCollister's motion to suppress. In October, Thomas P. Strigenz, from the same public defender's office, entered his appearance in the matter as counsel for McCollister.

At a hearing on December 7, 2017, the parties indicated they had reached a plea agreement on which they intended to proceed. McCollister entered a plea of guilty to the count of driving under the influence of alcohol or drugs (fifth or subsequent offense), and in exchange, the State dismissed the other charges. The State provided the following factual basis. On April 8, just before 1:30 p.m., a police officer was dispatched to a two-vehicle crash at a certain intersection in Sarpy County, Nebraska. When officers arrived, several individuals were at that location, including two members of the armed forces who had witnessed what had taken place "minutes earlier" and had directed a "neighbor" to call "911." According to witnesses, McCollister was driving "extremely erratically, coming down the hill, made a right-hand turn, very wide turn, which caused him to crash into a vehicle that was . . . travelling perpendicular to [McCollister's] vehicle before [McCollister] made that right-hand turn." McCollister's vehicle crashed into "this vehicle." McCollister then drove his vehicle away from the scene but returned within a few minutes and parked in a driveway about three to four houses down from where the collision took place. Members of the military and the victim of the crash were still at the scene. Law enforcement arrived moments later. Witnesses told the police that McCollister appeared to be heavily under the influence of "something, either alcohol or drugs." The officer asked McCollister what happened at the scene and "detected an odor of alcohol coming from [McCollister's] person." McCollister had slurred speech. McCollister told the officer that he was taking several medications, including two specific types of medications. He also said he had alcohol to drink before driving that day. He later told the drug recognition expert officer that he smoked marijuana that morning and also had a cookie that had marijuana baked into it. McCollister refused to submit to field sobriety "maneuvers" or to a preliminary breath test. Later, a breath test "turned up the presence of alcohol within [McCollister's] person." Laboratory tests of McCollister's urine, which he submitted to that day, confirmed the presence of one of the medications he told the officer about earlier. A drug recognition expert conducted a drug recognition evaluation on McCollister and opined through observations that McCollister was impaired to the extent to "appreciably impair his ability to operate a motor vehicle."

The State also asserted that there were several small empty bottles of vodka and one partial bottle of vodka found inside McCollister's vehicle at the scene. Two broken glass pipes with marijuana residue inside and a pill bottle with a small amount of suspected marijuana were also found inside that vehicle. McCollister was arrested for driving under the influence of alcohol.

According to the State, McCollister had the following prior convictions for driving under the influence of alcohol or drugs: two convictions from January 2015 (Sarpy County), one conviction from February 2015 (Dodge County, Nebraska), one conviction from March 2013 (Douglas County, Nebraska), and one conviction from May 2013 (Sarpy County). The State offered five exhibits of certified copies of filings reflecting the same. McCollister objected to the

exhibit of the alleged prior conviction out of Dodge County (exhibit 5), because it was set aside based on questionable test results. Exhibit 5 includes an order filed in January 2017 setting aside that conviction and sentence for driving under the influence in Dodge County. The district court received exhibit 5 conditionally, noting McCollister's argument upon it, and received the other uncontested exhibits (exhibits 1-4).

The district court found beyond a reasonable doubt that McCollister understood the nature of the charge and possible sentence. It found McCollister had freely, knowingly, intelligently, and voluntarily entered his plea. It found that there was a factual basis for the plea. The district court accepted the plea and found McCollister guilty of driving under the influence of alcohol or drugs (fifth or subsequent offense). The district court stated that, pursuant to exhibits 1 to 4, it would determine McCollister's present conviction a fifth offense. It said that exhibit 5 "would evince another conviction," but that it would "take [McCollister's] argument as true." It clarified that it found that exhibits 1 to 4 were prior valid convictions.

On September 10, 2018, the district court sentenced McCollister to 12 to 16 years' imprisonment, with 330 days' credit for time served. Additionally, the district court revoked McCollister's license for a period of 15 years.

McCollister appeals.

## III. ASSIGNMENTS OF ERROR

McCollister claims, restated and reordered, that (1) the district court erred when it convicted and sentenced him despite a conflict of interest between McCollister and his trial counsel, (2) the district court imposed an excessive sentence, and (3) his trial counsel provided ineffective assistance in various ways.

## IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. CONFLICT OF INTEREST

McCollister claims it was erroneous for the district court to convict and sentence him due to an alleged conflict of interest that arose when his attorney Gruhlkey (who appeared on his behalf regarding his motion to suppress) left the employ of the public defender's office and joined the Sarpy County Attorney's Office (county attorney's office). McCollister argues that at the time of his plea and sentencing, he was represented by a conflicted public defender's office and prosecuted by an office that was "potentially subject to disqualification due to their employment of

[Gruhlkey]." Brief for appellant at 15. However, as explained below, McCollister did not raise this issue until the same day he filed an appeal with this court, and therefore, the district court no longer had jurisdiction over the matter to address this claim.

On September 12, 2018 (2 days after sentencing), McCollister, pro se, filed a notice of appeal, a motion and affidavit for leave to proceed in forma pauperis on appeal, and a "Motion for an Order Compelling Withdrawal of Attorney and Request for a Hearing." He sought an order from the district court compelling withdrawal of the public defender's office as his counsel and appointing new counsel for him. McCollister's motion alleged that there was a conflict of interest between him and his court-appointed counsel. On September 17, the district court entered an order allowing McCollister to pursue his appeal in forma pauperis.

McCollister's motion was heard on October 12, 2018. McCollister informed the court that there was a conflict of interest with the public defender's office because Gruhlkey "went over" to the county attorney's office so he needed a court-appointed attorney "outside of" the public defender's office. The district court took judicial notice of the case file and took the matter under advisement. In its journal entry and order filed that same day, the district court noted some of the procedural history of the case and said it "normally would schedule a hearing on this matter and make its findings pursuant to order" but was "concerned" that that would not be accomplished before McCollister's appellate brief was due. The district court found that new counsel should be appointed to represent McCollister on appeal and it proceeded to appoint an attorney for that purpose. The district court also specifically stated in its order that it was making "no determination on the merits of [McCollister's] Motion to Compel Withdraw [sic] nor on whether a conflict exist[ed]." Subsequently, in response to a show cause order from this court, an order was filed granting the withdrawal of the public defender's office. See, *State v. Parnell*, 294 Neb. 551, 883 N.W.2d 652 (2016) (order to show cause issued by appellate court when record failed to reflect order granting withdrawal of trial attorneys; clarity in appellate record is necessary when claims of ineffective assistance of trial counsel are raised on direct appeal).

While the district court granted McCollister's request for different counsel on appeal, it properly elected to not address whether any conflict existed. As noted above, the district court no longer had jurisdiction to address such a claim since McCollister's appeal was perfected on September 12, 2018, when he timely filed a notice of appeal and a motion and affidavit for leave to proceed in forma pauperis on appeal. If an application to proceed in forma pauperis is timely filed with the clerk of the district court and granted by the district court, the appellate court acquires jurisdiction of the case when the notice of appeal is filed with the clerk of the district court. See Neb. Rev. Stat. § 29-2306 (Reissue 2016). See, also, *State v. Battershaw*, 220 Neb. 661, 371 N.W.2d 313 (1985) (district court is divested of jurisdiction over particular case when appeal of case is perfected to appellate court).

The district court was divested of subject matter jurisdiction over the cause upon perfection of McCollister's appeal to this court on September 12, 2018. Accordingly, as a consequence of McCollister not raising the issue of the alleged conflict of interest issue until he perfected his appeal, the issue was not timely presented to or passed upon by the district court; therefore, we will not address it either. See *State v. Kolbjornsen*, 295 Neb. 231, 888 N.W.2d 153 (2016) (appellate court will not consider issue on appeal that was not presented to or passed upon by trial

court). However, McCollister raises this same issue in his claims of ineffective assistance of trial counsel, and it is addressed later in this opinion in that context.

## 2. EXCESSIVE SENTENCE

McCollister claims his sentence is excessive. He was convicted of one count of driving under the influence of alcohol or drugs (fifth or subsequent offense) in violation of Neb. Rev. Stat. § 60-6,196(1) (Reissue 2010), which is a Class IIA felony under Neb. Rev. Stat. § 60-6,197.03(9) (Cum. Supp. 2016). A Class IIA felony is punishable by a maximum of 20 years' imprisonment. Neb. Rev. Stat. § 28-105(1) (Reissue 2016). A Class IIA felony under § 60-6,197.03(9) requires a minimum sentence of 2 years' imprisonment. McCollister was sentenced to 12 to 16 years' imprisonment, with credit for 330 days' time served. His sentence was within the statutory range. His license was revoked for a period of 15 years, which is mandatory under § 60-6,197.03(9).

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Leahy, supra*. In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

The presentence investigation report (PSR) shows McCollister, age 31 at the time of sentencing, has numerous charges reported in South Carolina from 2003 to 2011, for which the disposition was listed as unknown. These charges, excluding those which occurred before he was 19 years' old, include: burglary, grand larceny of $1,000 to $5,000, damage to property, and carrying weapon on school grounds (2005); disorderly conduct, open container, and receipt of stolen goods (2011); domestic violence -- 1st offense (2011); and failure to stop for "[b]lue" light, open container (two counts), possession of cocaine, and resisting arrest (2011). According to the PSR, McCollister said he pled to the "youth offender act" and was required to serve "1 to 6 years"; he spent 14 months in a county jail and 6 months in prison in South Carolina before being paroled in 2007. He reported that he was on probation for 5 years for possession of cocaine and that his probation was later transferred to Nebraska and terminated successfully.

Besides the four prior convictions for driving under the influence of alcohol or drugs noted previously, McCollister has convictions in Nebraska for open container of alcohol (2015, fine) and disturbing the peace (2016, fine). For each of his two 2013 convictions (one in Sarpy County, one in Douglas County) for driving under the influence, McCollister was sentenced to pay a $500 fine and serve 7 days in jail; also, his license was revoked for a period of 6 months in each case. For both of his 2015 convictions (in Sarpy County) for driving under the influence, he was sentenced to 12 to 36 months of jail time in each case. There is also a 2015 conviction for driving under the influence in Dodge County, and the PSR shows he was sentenced to 18 to 36 months of jail time,

and a 15-year license revocation (although as previously noted, exhibit 5 showed this conviction had been set aside). After entering a plea in the present matter, but before sentencing, McCollister committed the offense of "Driv[ing] While Revoked from DUI" in Stanton County, Nebraska, on January 5, 2018, for which he was convicted and sentenced with a fine of $3,000 and his license was revoked for 15 years.

The overall Level of Service/Case Management Inventory shows McCollister is at a high risk to reoffend. The PSR indicates that based on his criminal record and own admission, McCollister displayed problem solving and anger management deficits. McCollister engaged in denial and minimization techniques, and he "tried to place a majority of the blame on his mental health concerns" (he said he had diagnoses of "Major Depressive Disorder, Bi-Polar I, and General Anxiety Disorder").

According to the PSR, McCollister acknowledged problems with his alcohol use but denied having a problem with his drug use. He reported past treatment (for substance abuse) through: a facility in South Carolina (2011), the Nebraska State Penitentiary "RSP" program (2016), the Omaha Correctional Center Substance Abuse Unit (2017), and a facility on "13th and Farnam" (2017). He had attended "AA" meetings daily from May to August 2014, but was then "'locked up because [he] relapsed.'" He said that he had recently attended meetings and had a sponsor. McCollister completed substance use assessments, scoring as follows: moderate to high risk range for alcohol or drug abuse (Simple Screening Instrument); and maximum risk percentile in areas of alcohol/substance abuse, driver risk, and stress coping (Nebraska Driver Risk Inventory). McCollister was assessed to be a high risk to reoffend; his eligibility to be screened for the Specialized Substance Abuse Supervision Program (SSAS) was noted.

In McCollister's letter to the court, attached to the PSR, he asserted that he required intensive outpatient care rather than the treatment options offered in prison. He asked for another chance to prove himself and said a "deterrent like even a suspended sentence to hang over [his] head like 10 years suspended to 3-5 years [of] probation would be more productive than sending [him] to the big house." His mother and other individuals wrote letters to the court on his behalf, all attached to the PSR.

During sentencing, McCollister's trial counsel asked for McCollister's sentence to be to SSAS "for a long period of time," because a long period of imprisonment was "not going to solve [McCollister's] problem." Defense counsel said McCollister was "the most sober" he had been in "a long, long time," and that McCollister now knew that his recovery, mental status, and alcoholism was the "most important thing." Defense counsel also noted the strong support McCollister received from his mother.

McCollister personally avowed that he would do "whatever it takes to find the change, and break the chain." While on parole, he: worked; attended "AA," outpatient care, and "sponsoring"; and wore a "CAM bracelet." After removal of the "CAM bracelet," he learned how weak his willpower was and "lost" to his addiction after a few weeks. He "failed to talk to [his] parole officer and sponsor." There was "no good reason" for getting the "DUR" (driving under revocation conviction) besides wanting to take the risk. His vehicle was in an "undisclosed area to remove temptation." He viewed SSAS as something that could help him do the right thing until he had the "tools and strength" to do it himself.

The district court said it had spent "quite a bit of time" going through the PSR. It had McCollister's letter and said it took into account his thoughts and feelings spoken that day as well as comments of each party's counsel. It noted McCollister was a high risk to reoffend and was at "max risk" on the Nebraska Driver Risk Inventory. The court noted a disagreement between the parties on whether the present offense was a "7th lifetime." The court said it was a "5th lifetime or -- but it's so many DUIs. And so much driving. And then after getting sentenced for this and going to prison and getting released on parole, it continues to happen." The court agreed that McCollister was taking full responsibility for the present offense but stated that it had to look at his actions. It believed McCollister was sincere in saying he did not want to "do this" again. But it had to balance McCollister's wish with the "concerns of society." The court found that imprisonment was necessary for the protection of the public because the risk was substantial that McCollister would engage in additional criminal conduct if placed under probation and a lesser sentence would depreciate the seriousness of the offense and promote disrespect for the law.

On appeal, McCollister claims the district court weighed the seriousness of the offense too heavily and his potential for rehabilitation too lightly. However, he "does not contest that his offenses were of a serious nature." Brief for appellant at 12. He alleges that the court failed to sufficiently consider "several mitigating factors" in the PSR, including his "excellent family support system and amenability to treatment." *Id.* at 7. He argues that both evaluations completed for the PSR suggested he had significant substance dependence issues and claims he qualified for screening for the SSAS had the court placed him on probation.

All factors relevant to sentencing, as previously set forth from *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018), were covered in the comprehensive and lengthy PSR. The record reflects that the district court reviewed and considered the PSR's contents along with statements made during the sentencing hearing. The record does not show that the court relied on anything inappropriate. The district court's finding that imprisonment was necessary in this case was appropriately based on McCollister's prior criminal history, testing done in the case, and consideration of the nature and circumstances of the crime, history, character, and condition McCollister found himself in, as well as the PSR and statements received in it. The court was reasonably concerned that this was McCollister's fifth offense for driving under the influence of alcohol or drugs and indicated the risk was too high that McCollister would continue to repeat his behavior underlying his conviction if given probation, despite McCollister's stated will to do otherwise. Notably, McCollister drove under revocation within a month after entering a plea in this case. And while McCollister claimed that he regretted doing so, the record certainly supports the district court's concerns regarding McCollister actually changing his behavior given the history noted above. We conclude the district court did not abuse its discretion in imposing McCollister's sentence.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL

McCollister raises various claims of ineffective assistance of trial counsel. His counsel for this direct appeal is different than his trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the

record in order to preserve such claim. *State v. Spang*, 302 Neb. 285, 923 N.W.2d 59 (2019). Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id*. An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. See *id*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant has the burden to show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Spang, supra*. In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018). The prejudice requirement in a plea context is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id*.

With those principles in mind, we review each of McCollister's claims.

(a) Claims Concerning Alleged Conflict of Interest

McCollister claims his trial counsel was ineffective by (1) failing to advise him concerning the alleged conflict of interest created by trial attorney Gruhlkey obtaining employment with the county attorney's office and (2) failing to move for disqualification of that office. He argues his trial counsel did not advise him of the option to waive the conflict or move to disqualify the county attorney's office. He asserts that if his trial counsel had advised him about the alleged conflict of interest and made a motion "before advising [him] to plead no contest," there was a reasonable probability that he would have successfully moved to disqualify the county attorney's office and sought a different outcome upon the appointment of a new prosecutor. Brief for appellant at 18.

The Nebraska Supreme Court has rejected a per se rule of requiring disqualification of a prosecuting office when a conflict of interest with a defendant arises. See *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013). Under the approach taken by the Nebraska Supreme Court, the trial court evaluates the circumstances of a particular case and then determines whether disqualification of the entire office is appropriate. See *State v. Kinkennon*, 275 Neb. 570, 747 N.W.2d 437 (2008). Courts consider, among other things, whether the attorney divulged any confidential information to other prosecutors or participated in some way in the prosecution of the defendant. *Id*. The prosecuting office need not be disqualified from prosecuting the defendant if the attorney who had a prior relationship with the defendant is effectively isolated from any participation or discussion of matters concerning which the attorney is disqualified. *Id*. If impropriety is found, however, the court will require recusal of the entire office. *Id*.

Whether the apparent conflict of interest justified the disqualification of other members of the office is a matter committed to the discretion of the trial court. *Id*. In exercising that discretion, the court should consider all of the facts and circumstances and determine whether the prosecutorial function could be carried out impartially and without breaching any of the privileged communications. *Id*. Whether the State has established an effective screening procedure will be part of that analysis, and the Nebraska Supreme Court has discussed certain procedures that are required at a minimum and those procedures that may be appropriate depending on the

circumstances of each case. See *id.* A defendant can waive a conflict of interest that would disqualify the prosecuting office. See *State v. McGuire, supra*.

The record shows that Gruhlkey represented McCollister regarding his motion to suppress. There is no dispute on appeal that, at some point during the pendency of McCollister's case (whether before or after McCollister entered his plea is unknown on our record), Gruhlkey began working for the county attorney's office that was prosecuting McCollister. Gruhlkey's new employment, in general, presented a conflict of interest. See *id.* At the hearing on October 12, 2018, McCollister's trial attorney (Strigenz) told the district court that the public defender's office had "always taken the position that that conflict [concerning Gruhlkey] still exists." Strigenz did not know if the public defender's office had ever addressed "that" with McCollister but "thought" they had.

Our record is insufficient to address McCollister's claim regarding whether trial counsel disclosed a possible conflict of interest that the county attorney's office may have had once Gruhlkey obtained employment with that office. Although it was believed to have been discussed, there was some uncertainty. The record does not reveal whether McCollister was given an option to waive the conflict of interest or to move to disqualify the county attorney's office. Had a motion to disqualify been made, the record is insufficient to determine whether disqualification was warranted pursuant to the approach set forth in *State v. McGuire, supra*, and *State v. Kinkennon, supra*.

Although the State reasonably argues that since it already had access to "ample evidence" to prove McCollister's guilt beyond a reasonable doubt "long before [Gruhlkey] stopped representing him," there was "no reason to believe that McCollister would have entered a different plea had his trial counsel advised him of the conflict." Brief for appellee at 15. The State contends that no prejudice could have resulted from Gruhlkey's change in employment. While that may be true, our record is insufficient to fully resolve these claims.

(b) Claims Concerning Investigation of Defense and Entry of Plea

McCollister argues that he received ineffective assistance when his trial counsel failed to adequately investigate his defense and ensure that his plea was voluntary, knowing, and intelligent. His specific claims are set forth below.

*(i) Advice About Sentencing and Its Effect on Entry of Plea*

McCollister asserts that his trial counsel repeatedly advised him that the prosecutor would stand silent at sentencing and, because that did not ultimately happen, his plea was not knowing, voluntary, or intelligent. He claims trial counsel misrepresented that aspect of the plea agreement because the prosecutor (at sentencing) stated that "this is a true DUI 7th" and proceeded to ask for a "straight sentence." The record of the plea hearing shows that in reciting the intended plea agreement, prior to McCollister entering his plea, the State said "[t]here's no sentencing agreement." McCollister answered affirmatively when the district court asked him if the State's recitation was McCollister's understanding of the plea agreement. Even if his trial counsel advised him as alleged, the record shows that McCollister confirmed his understanding of the plea

agreement even after hearing the State specifically indicate there was no agreement with regard to sentencing.

The requirements to support finding McCollister entered a guilty plea freely, intelligently, voluntarily, and understandingly were met when the record of the plea hearing shows the district court informed him concerning (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination, and further informed McCollister of the range of penalties for the charge and concluded the State had provided a factual basis for the plea. See *State v. Lane*, 299 Neb. 170, 907 N.W.2d 737 (2018). McCollister does not assert that any of those requirements were not met. Accordingly, this claim of ineffective assistance of trial counsel is refuted by the record.

*(ii) Consultation About Medications and Investigation of Their Side Effects*

McCollister's next two claims are related; we discuss them together. He asserts that his trial counsel failed to adequately consult with him in person or over the telephone when, had his trial counsel done so, he would have told his trial counsel about the side effects of his psychiatric mediations (including, but not limited to, "glassy eyes, dry mouth, and dilated/unresponsive pupils"). Brief for appellant at 20. He believes that those alleged side effects did not impair his ability to drive. He also argues that his trial counsel failed to investigate his defense that those side effects "erroneously gave the drug recognition expert the opinion that he was impaired." *Id.*

The investigative report of the drug influence evaluation (investigative report), attached to the PSR, shows the drug recognition expert's opinion that McCollister was "under the influence of alcohol, CNS depressants and cannabis" and was "unable to operate a motor vehicle safely." Included in its reasoning was that McCollister stated at the start of the evaluation that he was taking four types of medications "all used to treat depression and or anxiety disorders and [were] in the CNS depressant category" and towards the end of the evaluation admitted to taking his "prescribed antidepressant/antipsychotic medication." In the body of the report, it was noted that McCollister had "rebound dilation" in both eyes, his reaction to light was slow, and he had a "white coating" on his tongue and "excessive cottonmouth." However, even if those conditions resulted from side effects of medications and even if McCollister could have informed his trial counsel about those side effects, the investigative report showed reliance on several other factors beyond those observations that led to its conclusion.

The other reasons supporting McCollister being under the influence and unable to operate a motor vehicle safely which were noted in the investigative report were: (1) McCollister was involved in a property damage accident where he had violated a stop sign causing a crash; (2) he had a measurable "BAC" of .082 at the start of the evaluation (taken at about 2:19 p.m.); (3) his pulse was recorded on three occasions at "82 bpm"; (4) his blood pressure was "140/80 mmHg"; (5) his body temperature was "98.3 degrees Fahrenheit"; (6) when McCollister was confronted about abusing cannabis, he "openly admitted that he had smoked marijuana upon waking up at approximately [6 to 7 a.m.] and also eating marijuana laced cookies that a friend had given him around noon time"; (7) he was found with marijuana (less than 1 ounce) and marijuana paraphernalia; (8) he showed "gross psychophysical impairment" during the "Walk and Turn Testing"; and (9) on the "One Leg Stand Testing," McCollister was noted to excessively sway

while balancing, using his arms to balance, and putting his foot down so he would not fall over. Also, McCollister consented to a test of his urine, which was taken the day of his offense (at 3:24 p.m.); the results from the sample showed detection of not only a metabolite of one of the medications he had reported to taking on the day of the offense, but also a metabolite of marijuana. McCollister does not dispute these factors or specifically allege that they too resulted from side effects of his medication.

Even if McCollister could show he was not impaired by the side effects of his medications, he has not alleged anything to dispute that he was not impaired by his apparent alcohol or marijuana use. Because the investigative report's conclusion was not confined to an opinion that McCollister was under the influence of "CNS depressants," but also opined he was under the influence of alcohol and cannabis, McCollister would not be able to establish prejudice by his trial counsel's alleged deficiencies regarding consultation and investigation about the side effects of his psychiatric medications. These claims of ineffective assistance fail.

### (iii) Obtaining Forensic Toxicologist Expert

McCollister asserts that his trial counsel was ineffective for advising him to enter a plea without obtaining the services of an expert in forensic toxicology. He argues that had his trial counsel done so, he "would not have pled but insisted on trial where the expert would have testified that the combination of substances in [his] body did not impair his ability to drive." Brief for appellant at 20. This claim is similar to those just discussed in that it is also premised on the notion that his ability to drive was not impaired. As already discussed, even if McCollister was able to produce evidence that his prescription drugs did not contribute to any impairment in his driving ability, there was ample other evidence to support a finding of such an impairment from other sources; further, he does not allege how an expert in forensic toxicology could conclude that the evidence of his use of alcohol and marijuana could not have impaired his ability to drive. This claim of ineffective assistance of trial counsel is without merit.

### (iv) Raising State's Coercive Tactics to District Court

McCollister argues that his trial counsel should have brought the "coercive tactics" of the State to the district court's attention "where the prosecutor only agreed to let [him] leave jail on pretrial release in exchange for his agreement to plead no contest, and the prosecutor knew that [his] mother had recently had surgery and [he] needed to get back to her." *Id*. The record of the plea hearing shows that pretrial release was part of the plea agreement. The State's motivation for agreeing to that term for the plea is not contained in our record, but we cannot see how McCollister was prejudiced by agreeing to the plea offer that resulted in four out of five charges being dismissed. The record demonstrates that the district court specifically discussed the plea negotiations with McCollister in the courtroom. The court noted that by tendering a plea to "Count I," then "Counts II, III, IV, and V are dismissed." The court also noted recommendations about bond and that there "may or may not be some about sentencing." He asked McCollister if that was his understanding; McCollister replied, "Yes, sir." Trial counsel affirmed on the record that he believed the plea was in McCollister's best interests. Despite the opportunity to do so, at no time did McCollister indicate to the district court that he felt compelled to take the plea offer

so he could obtain pretrial release. Further, McCollister does not explain how his trial counsel's failure to point out the prosecutor's tying McCollister's acceptance of the plea to his pretrial release could possibly have prejudiced him when his acceptance of the plea resulted in the dismissal of four out of five charges which could have resulted in a substantially longer term of imprisonment if found guilty. McCollister has failed to show a reasonable probability that but for this aspect of the plea negotiations and offer, he would have insisted on going to trial on all five charges rather than pleading guilty to the one. We find no merit to this claim of ineffective assistance of trial counsel.

## VI. CONCLUSION

For the foregoing reasons, we affirm McCollister's conviction and sentence. Regarding McCollister's claims of ineffective assistance of trial counsel, we conclude all of his claims fail except for the one claim we cannot resolve because the record is insufficient, specifically whether McCollister's trial counsel addressed with McCollister a possible conflict of interest when his first trial counsel obtained a new position with the county attorney's office that was prosecuting McCollister's case.

AFFIRMED.