IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. GONSALEZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JUAN GONSALEZ, APPELLANT.

Filed December 31, 2019.    No. A-19-198.

Appeal from the District Court for Polk County: RACHEL A. DAUGHERTY, Judge. Affirmed.

Bruce E. Stephens, of Stephens Law Offices, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

BISHOP, Judge.

Juan Gonsalez pled no contest to three counts of third degree sexual assault of a child and two counts of child abuse, all Class IIIA felonies. The Polk County District Court sentenced him to 3 years' imprisonment on each of the five counts (all sentences to be served consecutively), with 498 days' credit for time served, followed by 18 months' postrelease supervision. Gonsalez claims the district court imposed excessive sentences and his trial counsel was ineffective. We affirm.

BACKGROUND

On October 30, 2017, the State filed an information charging Gonsalez with one count of first degree sexual assault of a child (named victim R.A.M.), a Class IB felony, pursuant to Neb. Rev. Stat. § 28-319.01 (Reissue 2016); one count of third degree sexual assault of a child (named victim R.A.M.), a Class IIIA felony, pursuant to Neb. Rev. Stat. § 28-320.01 (Reissue 2016); and one count of child abuse (no victim named), a Class IIIA felony, pursuant to Neb. Rev. Stat. § 28-707 (Reissue 2016).

- 1 -

On December 26, 2017, the State filed an amended information charging Gonsalez with two counts of first degree sexual assault of a child (named victims R.A.M. and A.L.), each a Class IB felony, pursuant to § 28-319.01; two counts of third degree sexual assault of a child (named victims R.A.M. and A.L.), each a Class IIIA felony, pursuant to § 28-320.01; and two counts of child abuse (no victim named), each a Class IIIA felony, pursuant to § 28-707.

In a second amended information filed on April 20, 2018, the State charged Gonsalez with the same counts as in the amended petition, but dismissed the count of first degree sexual assault of a child naming A.L. as the victim.

Pursuant to a plea agreement, the State once again amended the information on November 7, 2018, charging Gonsalez with three counts of third degree sexual assault of a child (named victim R.A.M.), each a Class IIIA felony, pursuant to § 28-320.01; and two counts of child abuse (named victim R.A.M.), each a Class IIIA felony, pursuant to § 28-707. At a hearing that same day, Gonsalez appeared with his counsel and a certified interpreter and pled "no contest" to all counts in this third amended information. According to the factual basis provided by the State,

[O]n or between . . . January 1st, 2017, and May 22, 2017, . . . Gonsalez . . . date of birth [April 1979 or December 1984], at all times relevant to the charge[s], . . . was over the age of 19. During that period, . . . Gonsalez . . . was dating . . . RAM's mother. RAM has a date of birth of [January 2007].

. . . .

. . . During the course of the relationship, Mr. Gonsalez would spend time at the residence where RAM and her mother lived . . . .

Multiple times during the course of that relationship and time period, [Gonsalez] would come into RAM's bedroom and approach her when no one else was around in the home. During those times, he would touch her on the breast, vagina, inner thigh and at times would expose his penis and rub his penis against RAM. RAM did not allege penetration by the penis. That happened more than one time and that all occurred in . . . Polk County, Nebraska.

The district court then asked, "Did it happen a minimum of three times?" And the State responded, "Yes, Your Honor." The district court accepted Gonsalez' no contest pleas to each count, and found him guilty of the same. The case was set for sentencing.

After a hearing on January 28, 2019, the district court sentenced Gonsalez to 3 years' imprisonment on each of the five counts (all sentences to be served consecutively), with 498 days' credit for time served, followed by 18 months' postrelease supervision.

Gonsalez appeals.

## ASSIGNMENTS OF ERROR

Gonsalez assigns (1) the district court imposed an excessive sentence and (2) his counsel was "inadequate."

In *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019), the Nebraska Supreme Court clarified that the allegations of counsel's deficient performance must be specifically alleged in the assignments of error section of the appellant's brief. Gonsalez' claim that counsel was "inadequate" is not a specific allegation. However, because Gonsalez' brief was filed the same day

the *Mrza* opinion was released, we will examine the argument section of his brief for the necessary specificity.

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## ANALYSIS

### EXCESSIVE SENTENCE

Gonsalez claims his sentences are excessive. He was convicted of three counts of third degree sexual assault of a child, each a Class IIIA felony, pursuant to § 28-320.01; and two counts of child abuse, each a Class IIIA felony, pursuant to § 28-707. A Class IIIA felony is punishable by a maximum of 3 years' imprisonment and 18 months' postrelease supervision, or a $10,000 fine, or both; there is no minimum term of imprisonment, but there is a minimum of 9 months' postrelease supervision if imprisonment is imposed. See Neb. Rev. Stat. § 28-105(1) (Reissue 2016). Gonsalez was sentenced to 3 years' imprisonment on each of the five counts (all sentences to be served consecutively), with 498 days' credit for time served, followed by 18 months' postrelease supervision. His sentences were within the statutory range.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Leahy, supra.* In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Gonsalez was 34 years old at the time of sentencing. According to the presentence report (PSR), Gonsalez was born in Guatemala, and his wife and two daughters remain in Guatemala. Gonsalez had no formal education because "[i]n his native country it costs a great deal of money to send a child to school." He would like to study and obtain his GED. Gonsalez came to the United States in 2006 to obtain a job so that he could support his family. He had maintained employment until his arrest in the current case. He reported that he does not read or write well, nor does he understand certain things he is told.

Gonsalez' criminal history consists only of fines in 2015 for "No Operator's License/Waiverable" (Twice), "Fail to Signal Turn," and "Fail to Stay in Lane." His current convictions were for three counts of third degree sexual assault of a child and two counts of child abuse.

The probation officer conducted a level of service/case management index. Gonsalez was assessed as an overall "moderate" risk to reoffend. He scored "[v]ery [h]igh" in the criminogenic risk factor domain for companions (due to his incarceration for over the past 12 months). He scored "[h]igh" risk in the domains for leisure/recreation, education/employment, and procriminal attitude. He scored "[m]edium" risk in the domain for antisocial pattern. And he scored "[l]ow" or "[v]ery [l]ow" risk in the domains for criminal history, family/marital, and alcohol/drug problem. Gonsalez also placed in the "[m]edium-[l]ow" risk range for reoffending on the Vermont Assessment of Sex Offender Risk.

"Given the severity of this crime, [Gonsalez'] complete denial as well as his lack of responsibility, and the detail provided by the victim in this case," the probation officer did not feel that Gonsalez was a suitable candidate for probation. The probation officer recommended the court sentence Gonsalez to "a straight sentence" with the "maximum postrelease supervision term allowed to permit for adequate time for services and programming to be completed," with a mental health evaluation and sex offender group therapy/counseling as conditions of his postrelease supervision.

At the sentencing hearing, the district court noted it was "in receipt" of the PSR, that it had "received a copy of a deposition" of R.A.M. (the named victim), and it had "received 11 letters provided by [trial counsel] on behalf of [Gonsalez]"; it indicated that the letters were to be included in the PSR. The State informed the court it had one addition to the PSR, "a three page report, DNA report from the Nebraska State Crime Lab"; according to the State, this DNA report "describe[d] a stain found on the victim's shorts" and "although that semen was not [a] sufficient amount to obtain sufficient material for DNA," "there were epithelial or skin cells obtained, and those epithelial cells matched [Gonsalez]." (Neither the letters nor the DNA report appear in our record.) Upon inquiry of Gonsalez' counsel, the court also stated that it had "reviewed the deposition of AL." (The deposition of A.L. does not appear in our record.)

Gonsalez' counsel informed the district court that he had "a couple of proposed changes" to "page 3" of the PSR. Counsel stated, "It is Mr. Gonsalez' position that his true name is Pedro Gomez Zetino" (this is one of the aliases listed for Gonsalez in the PSR), "his age is 34 and his date of birth is December . . . 1984," "he is an undocumented person," and "he is a Christian and that his church is the Reborn Church." The court stated it would note those changes.

The State argued that R.A.M. had been consistent throughout about the abuse by Gonsalez. According to the State, "The descriptions of the abuse by both victims [R.A.M. and A.L.] were similar. [Gonsalez] would come during the night when the house was asleep and find the victim sleeping." The State noted that A.L. (the counts related to her were dismissed) "did acknowledge in her deposition that she did lie," but "the lies were related to abuse by her brother," and "at the behest" of her mother, A.L. kept the "family secret." However, A.L.'s "allegations about what happened between her and [Gonsalez] were consistent." The State argued, "[t]hese crimes have had a profound impact on the charged victim and the one that was dismissed." The State sought consecutive periods of incarceration "at or near" the maximum.

Gonsalez' counsel argued that the DNA report the State provided stating that the "epithelial" or "skin cells" found on an article of clothing worn by R.A.M. was "no surprise" because Gonsalez and R.A.M. were in the same house. Counsel further argued that the DNA report states "the results for that [sperm] fraction are uninterpretable" and it gave "no opinion" that Gonsalez was a contributor to that fraction. Counsel also challenged A.L.'s credibility and claimed that many of the "similarities between the allegations" involving A.L. and R.A.M. are similarities in conduct done upon A.L. by her brother, not Gonsalez. Counsel also seemed to challenge R.A.M.'s credibility. However, the district court stated, "This is not a time for the Court to reweigh the credibility or to make a finding of guilt or innocence. That finding has already been made."

Gonsalez' counsel noted that Gonsalez came to the United States, leaving his wife and children behind, so that he could provide financially. Since 2006, Gonsalez' criminal history "is slight if not almost nonexistent." "We have some traffic offenses, but it is not a picture of somebody who is a dangerous person, but a picture of somebody who lives a law-abiding life." Counsel stated that Gonsalez does not have a drug or alcohol problem and therefore he has "the capacity for change." And Gonsalez "has a support system [as evidenced by letters the court received] to get him through the treatment and the need to become a better citizen." Counsel's position was that "there should be a difference between the top and the bottom numbers" of the sentence to allow Gonsalez "to have a hope for an earlier release date, a motivation to work with the system to better himself, and get back to a position in life where he can again help those that depend on him." (However, we note that a determinate sentence was required in this case. See Neb. Rev. Stat. § 29-2204.02 (Reissue 2016).)

Gonsalez spoke in his own behalf and stated, "The two girls that are accusing me, I mean, they're lying, and also RA[M]'s mother." He also referenced an "officer" who "gave his testimony here today" and "lied" about questioning him (Gonsalez); however, we note that no testimony was given at the sentencing hearing.

The district court noted that it had considered the relevant sentencing factors and "that by virtue of the plea agreement," Gonsalez "received a substantial reduction in potential time to be served." The court stated it considered "mitigating factors" including Gonsalez' church involvement and the letters provided by members of his church and his "insignificant" criminal history. However, the court "recognize[d] that due to the types of crimes that [Gonsalez had] committed, that is crimes against a child, it is not unusual to have a limited criminal history." "By preying upon the most vulnerable members of society, those who are the least likely to report, and at times to be believed, [Gonsalez had] limited [his] exposure." Further, Gonsalez had expressed no remorse and blamed the victim, her mother, and law enforcement. The court found that Gonsalez was not a fit and proper candidate for probation and sentenced him to 3 years' imprisonment on each of the five counts (all sentences to be served consecutively), with 498 days' credit for time served, followed by 18 months' postrelease supervision.

Having considered the relevant factors in this case, we find that Gonsalez' sentences were not excessive or an abuse of discretion and his sentences are therefore affirmed. See, *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018) (sentence imposed within statutory limits will not be disturbed on appeal absent abuse of discretion by trial court; it is within trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively); *State v. Meehan*, 7 Neb. App. 639, 585 N.W.2d 459 (1998) (sentencing court has broad discretion

in source and type of evidence it may use in determining kind and extent of punishment to be imposed within limits fixed by statute; sentencing court in noncapital cases may consider defendant's nonadjudicated misconduct in determining appropriate sentence).

INEFFECTIVE ASSISTANCE OF COUNSEL

Gonsalez claims his trial counsel was ineffective. His counsel for this direct appeal differs from his trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record in order to preserve such claim. *State v. Spang*, 302 Neb. 285, 923 N.W.2d 59 (2019). Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id*. An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant has the burden to show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Spang, supra*. In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id.*

In his brief, Gonsalez states that his trial counsel "failed to properly advise [him] of his rights, in particular the effects that any conviction would have on his immigration status as well as his rights regarding suppression hearings, etc." Brief for appellant at 12. However, as noted by the State, "Because it is not at all clear what the term 'etc.' is intended to encompass, that portion of the allegation fails to state a claim." Brief for appellee at 10. See *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016) (ineffective assistance of counsel claim is raised on direct appeal when allegations of deficient performance are made with enough particularity for (1) appellate court to make determination of whether claim can be decided upon trial record and (2) district court later reviewing petition for postconviction relief to be able to recognize whether claim was brought before appellate court). The record before us is sufficient to resolve Gonsalez' two remaining claims.

Although Gonsalez claims that his trial counsel was ineffective for failing to advise him of his rights regarding a suppression hearing, that claim is refuted by the record. Before the district court accepted Gonsalez' no contest pleas, the following colloquy was had on the record:

> THE COURT: Sir, if I accept your no contest pleas, you would waive or give up your right to contest the admissibility of any statements or evidence taken from you; do you understand that?
>
> [GONSALEZ]: Yes.
>
> THE COURT: And have you discussed that right and waiving it with your counsel?

[GONSALEZ]: Yes.

THE COURT: And is it your desire to waive that right?

[GONSALEZ]: Yes.

THE COURT: [Counsel], do you believe that your client understands he's waiving his right to Motion to Suppress?

[COUNSEL]: Your Honor, I do.

THE COURT: The Court finds beyond a reasonable doubt that [Gonsalez] understands his right to Motion to Suppress, he waives that right, doing so freely, voluntarily, knowingly and intelligently.

Because Gonsalez' claim regarding the motion to suppress is refuted by the record, it fails.

Gonsalez also claims that counsel was ineffective for failing to properly advise him of the effects a conviction would have on his immigration status. Both Gonsalez and the State contend that the record before us is insufficient to address this claim. However, we find that even if trial counsel was deficient for failing to advise Gonsalez of the immigration consequences of a conviction, that deficient performance would not have prejudiced Gonsalez because the district court specifically advised Gonsalez of the immigration consequences at a combined arraignment/plea hearing. The arraignment and plea both took place on November 7, 2018, and took a total of approximately 1 hour. At the arraignment portion of the hearing, Gonsalez (and others in unrelated cases) were told by the district court, "I'm also required to inform . . . you that in the event that you are not a citizen of the United States and you are convicted of one of these offenses, there could be certain consequences, including your removal from the United States or denial of naturalization pursuant to the laws of the United States." See Neb. Rev. Stat. § 29-1819.02(1) (Reissue 2016) (directing trial courts to administer the following advisement to a defendant prior to accepting a plea of guilty or no contest "to any offense punishable as a crime under state law, except offenses designated as infractions under state law": "IF YOU ARE NOT A UNITED STATES CITIZEN, YOU ARE HEREBY ADVISED THAT CONVICTION OF THE OFFENSE FOR WHICH YOU HAVE BEEN CHARGED MAY HAVE THE CONSEQUENCES OF REMOVAL FROM THE UNITED STATES, OR DENIAL OF NATURALIZATION PURSUANT TO THE LAWS OF THE UNITED STATES"). Following the advisement, an unrelated case was addressed and then Gonsalez' case was called back up for his plea hearing. Because Gonsalez was specifically advised of the immigration consequences of a conviction by the district court, his ineffective assistance of counsel claim regarding the advisement fails.

CONCLUSION

For the reasons set forth above, we affirm Gonsalez' sentences. Regarding Gonsalez' claims of ineffective assistance of trial counsel, we conclude all of his claims fail.

AFFIRMED.