Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/17/2020 08:08 AM CDT

State of Nebraska, appellee, v.
Mason J. Wells, appellant.
___ N.W.2d ___

Filed March 10, 2020.    No. A-19-257.

1. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.
2. **Sentences.** In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.
3. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.
4. ____. An indeterminate sentence is a minimum term and maximum term or range of time for which the defendant is to be incarcerated, even if the minimum and maximum number are the same.
5. ____. When a sentence for a misdemeanor is imposed consecutively or concurrently with sentences for felony convictions, the felony classifications will dictate whether the misdemeanor sentence should be a determinate or indeterminate sentence.

Appeal from the District Court for Greeley County: Karin L. Noakes, Judge. Affirmed in part, and in part vacated and remanded for resentencing.

Mark Porto, of Porto Law Office, for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

RIEDMANN, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

Mason J. Wells was initially charged with 19 counts of various felony and misdemeanor violations stemming from actions he took in May 2018 in Greeley County, Nebraska. Pursuant to a plea agreement, he pled no contest to seven counts related to an incident involving a firearm, kidnapping, terroristic threats, false imprisonment, third degree assault, and criminal mischief. The Greeley County District Court sentenced Wells to various consecutive and concurrent sentences on his felony and misdemeanor convictions. Wells, who was 20 years old at the time of sentencing, contends the district court imposed excessive sentences. The State disagrees, but claims the district court committed plain error by imposing determinate rather than indeterminate sentences for some of the convictions. We affirm in part, and in part vacate and remand for resentencing on some of the sentences imposed.

## BACKGROUND

On the evening of May 4, 2018, Wells was present at a party taking place outside of Spalding, Nebraska. A number of juveniles were also present, including the four male victims in this case: C.H. and W.F., who were both 17 years old; B.K., who was 15 years old; and T.B., who was 16 years old. Wells and another individual, Nicholas Vanderheiden, approached the victims at the party location and physically assaulted C.H. and W.F. The four victims got into a vehicle and left the party, but were followed and overtaken by Wells and Vanderheiden. C.H. and W.F. were forced out of their vehicle at gunpoint and were subsequently further assaulted. The assault was disrupted when a vehicle approached and another young man, B.B., intervened. He was also assaulted, but he got away and contacted law enforcement.

On July 18, 2018, the State filed an information charging Wells with a total of 19 counts: 8 counts of use of a firearm to commit a felony, each a Class IC felony, pursuant to Neb. Rev. Stat. § 28-1205(1)(c) (Reissue 2016); 4 counts of "Kidnapping-Voluntarily Released Alive" (named victims C.H., W.F., B.K., and T.B.), each a Class II felony, pursuant to Neb. Rev. Stat. § 28-313(1)(c) and (3) (Reissue 2016); 4 counts of terroristic threats (named victims C.H., W.F., B.K., and T.B.), each a Class IIIA felony, pursuant to Neb. Rev. Stat. § 28-311.01 (Reissue 2016); and 3 counts of third degree assault (named victims C.H., W.F., and B.B.), each a Class I misdemeanor, pursuant to Neb. Rev. Stat. § 28-310 (Reissue 2016).

Pursuant to a plea agreement, the State filed an amended information on January 11, 2019, charging Wells with seven counts: possession of a deadly weapon (firearm) during the commission of a felony, a Class II felony, pursuant to § 28-1205(2)(c) (count I); "Kidnapping-Voluntarily Released Alive" (named victim W.F.), a Class II felony, pursuant to § 28-313(1)(c) and (3) (count II); terroristic threats (named victim C.H.), a Class IIIA felony, pursuant to § 28-311.01 (count III); second degree false imprisonment (named victims T.B. and B.K.), a Class I misdemeanor, pursuant to Neb. Rev. Stat. § 28-315 (Reissue 2016) (counts IV and V); third degree assault (named victim B.B.), a Class I misdemeanor, pursuant to § 28-310 (count VI); and "Criminal Mischief $500-$1,500," a Class II misdemeanor, pursuant to Neb. Rev. Stat. § 28-519(1) and (4) (Reissue 2016) (count VII).

At a hearing on January 14, 2019, Wells pled no contest to all seven counts in the amended information. According to the factual basis provided by the State:

On the evening of May 4, 2018[,] a party was held at [a named location] about seven miles outside Spalding, Nebraska in Greeley County. The event was a going away party for [a person] leaving for school out of state. A number of juveniles were present at the event; [W.F.],

[C.H.], [T.B.], B.K.], and . . . other witnesses . . . , as were defendants . . . Wells and . . . Vanderheiden.

Throughout the evening [W.F.] was approached on more than one occasion by another defendant who told [W.F.] he was going to fight him. Wells made the same statement to several others at the party. . . . Approximately 11:30 p.m. [W.F.], [C.H.], [T.B.], [B.K.], and [one other person], all juveniles, got into [W.F.'s] pickup to leave the party. Wells approached the pickup and repeatedly told [W.F.] they were going to fight. . . .

[W.F.] repeatedly told Wells they were not going to fight and asked to just let them leave. Wells repeated his demands that [W.F.] and the passengers get out of his pickup. Wells stated, "Get out of the pickup or it's going to be worse for all of you. Just get out." [W.F.] and the other passengers . . . exited the pickup.

[W.F.] repeatedly told Wells he did not want to fight him and turned toward his pickup. Wells struck [W.F.] in the face two times and in the back one time with closed fists.

The four victims; [W.F.], [C.H.], [T.B.] and [B.K.], got back into [W.F.'s] pickup. [W.F.] locked his door. Wells went over to the front passenger side of the pickup where [C.H.] was sitting with the door open. Wells demanded [C.H.] get out. [C.H.] refused to do so, and Wells struck [C.H.] in the face while [C.H.] was seated in the pickup.

Another person told Wells to get off [C.H.] and let him go. At this point Vanderheiden . . . grabbed the bug guard on [W.F.'s] pickup and broke off a piece, then came around to the driver's side and broke the driver's side mirror. . . .

One of Wells' friends grabbed . . . Wells, restraining him and yelled at [W.F.] to go. [W.F.] started the pickup and left immediately with [C.H.], [T.B.], and [B.K.] in the pickup with him.

[W.F.] was driving down WPA Road when a pickup driven by Wells, with Vanderheiden as his passenger, overtook [W.F.'s] pickup and swung the pickup sideways on the road effectively blocking the road so [W.F.] could not pass. [W.F.] put his vehicle in reverse and started to back up to get away from Wells and Vanderheiden.

At that point Wells exited his pickup holding a shotgun, which he pointed at [W.F.] Vanderheiden also exited the pickup holding a rifle. Wells pointed his weapon at [C.H.] and demanded he get the fuck out of the vehicle. Wells pulled [C.H.] out of the passenger side of [W.F.'s] pickup. During the same time, Vanderheiden stated, "We could kill all of you and bury you and no one would know." The same statement, or similar words, were repeated several times by Vanderheiden during this course of events, and in the presence of Wells, as well as [W.F.], [C.H.], [T.B.], and [B.K.], the victims.

Wells stated, "I'm going to get in [W.F.'s] truck and you go get in with [Vanderheiden]." Vanderheiden pointed his rifle at [C.H.] and walked [C.H.] over to Wells' pickup. Vanderheiden then forced [C.H.] into Wells' pickup. Wells got into [W.F.'s] pickup in the front passenger seat. Vanderheiden proceeded to drive off in Wells' pickup, and Wells told [W.F.] to follow [Vanderheiden]. [W.F.] complied. During the drive Wells stated to [W.F.], [T.B.], and [B.K.], "You guys made this a lot worse by leaving."

After traveling approximately a half to three-quarters of a mile, Vanderheiden stopped Wells' pickup. [W.F.] stopped as well. Vanderheiden told [C.H.] to get out with your hands up or I'll put a round in your dome. [C.H.] exited Wells' pickup. Vanderheiden pointed a rifle at [C.H.] and they both walked towards [W.F.'s] pickup. Vanderheiden told [C.H.], "I've been waiting to do this for a long time", and "I will kill you and bury you in a hog confinement". Wells yelled at [C.H.] and [W.F.]

warning them that if they tried anything he wouldn't hesitate to shoot all of us. [T.B.] and [B.K.] were in this presence [sic] when all of this occurred. They're in the backseat of the pickup.

Wells exited [W.F.'s] pickup and spoke briefly with Vanderheiden. Vanderheiden then approached [W.F.'s] door and opened it. After he yelled continually at [W.F.], Vanderheiden punched [W.F.], pulled him out of the pickup and continued to assault him. At that point Wells . . . continued to assault [W.F.] At some point [W.F.] got back into his pickup. Wells then told him again to exit the pickup. [W.F.] did so, walked around to the passenger side of the pickup.

At that point, Vanderheiden demanded that [W.F.] get back into his vehicle. As [W.F.] was walking back towards the driver's side of the pickup, Vanderheiden jabbed the butt of the rifle he was holding into [W.F.'s] back and told him, "I will shoot you." Right as [W.F.] was getting back into his pickup, Vanderheiden pulled him out again and started hitting [W.F.] [C.H.] and Wells were behind [W.F.'s] pickup.

At this point, [B.B.], who was driving along WPA Road, came upon this scene. He jumped out of his pickup and began yelling at Wells. Wells put his weapon down on the pickup, and [B.B.] then pushed Vanderheiden, who still had a rifle. Wells ran toward [B.B.] and began hitting and kicking [B.B.] Vanderheiden began assaulting [B.B.], as well. The assault ended when [B.B.] got free, returned to his pickup, and left. Wells and Vanderheiden told [W.F.] and [C.H.] to leave. Wells stated, "[B.B.'s] dead now." [C.H.] and [W.F.] got back into [W.F.'s] pickup and left. So, the four victims left in [W.F.'s] pickup.

[B.B.] contacted [law enforcement]. Wells and Vanderheiden left the scene. Several contacts were made to 911, and [law enforcement was] dispatched to the scene. Law enforcement arrived at [the location of the

going away party] where Wells' pickup was found parked. On seeing weapons in plain sight in the vehicle, law enforcement confiscated the weapons in the vehicle, which included a .308 caliber rifle and a 12-gauge tactical shotgun described by victims, as well as high-capacity magazines for the shotgun and three other weapons.

The juveniles, victims' names and ages at the time of the offense: [W.F.], 17 years old; [C.H.], 17 years old; [T.B.], 16 years old; and [B.K.], 15 years old. These events did take place in Greeley County, Nebraska.

Upon inquiry from the district court, the State said that B.B. was 20 years old. When asked by the court why he wanted to fight W.F., Wells stated, "Alcohol. There was some stuff between a girlfriend and my kid." And when asked why he was driving around with guns in his vehicle, Wells responded, "We were trap shooting earlier that day." He further stated, "I always have my .22 and my .308 with me. That's just one gun I always carried, and then the rest were shotguns that we had there to use to trap shoot." Defense counsel also informed the court that the going away party was at a trapshooting facility. The district court accepted Wells' no contest pleas to each count and found him guilty of the same. The case was set for sentencing.

After a hearing on February 25, 2019, the district court sentenced Wells to 5 to 10 years' imprisonment on count I, 5 to 10 years' imprisonment on count II, 3 years' imprisonment on count III, 1 year's imprisonment each on counts IV, V, and VI, and 6 months' imprisonment on count VII. The sentences in counts II through VII were to be served concurrently with each other, but consecutively to count I. Wells was given credit for 4 days' time served. Additionally, Wells was ordered to pay restitution in the amount of $606.94 to W.F. and $343.86 to C.H.; restitution was to be paid "jointly and severally with . . . Vanderheiden within 2 years of [Wells'] final release date from imprisonment."

Wells appeals.

## ASSIGNMENT OF ERROR

Wells assigns the district court erred by imposing excessive sentences.

## STANDARD OF REVIEW

[1] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018).

## ANALYSIS

Wells asserts that the district court imposed excessive sentences and that upon consideration of all of the appropriate sentencing factors, and considering mitigating circumstances, an overall lesser sentence would have been more appropriate. The State contends that Wells' sentences were not excessive, but that the sentences in counts III through VII did involve plain error, as discussed below.

[2,3] In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Wells was 20 years old at the time of sentencing. According to the presentence report (PSR), his marital status was single, but he was in a relationship with the mother of his child. He graduated from high school in 2017. At the time of the presentence investigation interview, he reported having been employed as a welder for the past week and being previously employed at a hog barn and as a farmhand.

Wells' criminal history includes a conviction for "MIP-Alcohol," for which he was sentenced to 2 days' jail time and 12 months' probation; however, his probation was revoked, and he was sentenced to 15 days' jail time. He has also been cited for numerous traffic offenses for which he received fines. His current convictions were for the amended charges of possession of a firearm during the commission of a felony, kidnapping W.F., making terroristic threats against C.H., the second degree false imprisonments of T.B. and B.K., the third degree assault of B.B., and "Criminal Mischief $500-$1,500" for damage caused to W.F.'s pickup.

The probation officer conducted a "Level of Service/Case Management Inventory." Wells was assessed as an overall "[m]edium [h]igh" risk to reoffend. He scored "[h]igh" in the criminogenic risk factor domains for leisure/recreation and alcohol/drug problem. He scored "[m]edium" risk in the domains for criminal history, companions, procriminal attitude/orientation, and antisocial pattern. And he scored "[v]ery [l]ow" risk in the domains for education/employment and family/marital. He scored in the "problem-risk range" in the areas of alcohol and violence on the "Substance Abuse Questionnaire." During the presentence investigation interview, Wells reported that his father used to be an alcoholic and was addicted to opiates, but has been clean for some unknown period of time. Wells reported first trying alcohol around age 14, consuming alcohol "'a lot'" from ages 16 to 18, and consuming alcohol almost every night by the age of 19. He reported that he last used alcohol the night of the incident that led to his current convictions. After his arrest, he attended treatment from May to June 2018, where he was diagnosed with "Alcohol Use Disorder Severe." Wells reported that the day of the incident leading to his convictions involved trapshooting and alcohol consumption. According to the PSR, Wells "does feel he was in the wrong in this incident as he stated, 'this is completely stupid and I was not thinking straight.'" "In regard to the victims, [Wells] stated this was a 'stupid drunk incident.'" Wells

"reported this is not the only time an incident like this has happened," but "he 'just got caught this time.'" According to the PSR, Wells was on probation when this incident occurred. The probation officer stated, "Considering the nature of this incident, this officer feels incarceration is appropriate. I would consider [Wells] an appropriate candidate for probation/post-release supervision with the class of crimes he is eligible for." However, the probation officer recommended certain conditions if the court were to sentence Wells to probation or post-release supervision.

At the sentencing hearing, Wells stipulated to a restitution payment (jointly and severally) of $606.94 to W.F. and $343.86 to C.H. The State read victim impact statements by C.H. and W.F. on the record; the statements noted emotional and psychological damage from the incident.

The State argued that "probation won't work at all" as Wells had been "been given probation and he did not comply with probation." The State also claimed Wells' "behavior of bullying and physical violence has been escalating since he was 14 years old." (We note the PSR notes "multiple disciplinary issues" when Wells was in school to include having a rifle on school property and suspensions due to bullying, violating off-campus lunch policies, and showing disrespect toward teachers. Additionally, in C.H.'s victim impact statement, he recounted being assaulted by Wells in the past, as well as Wells' assaulting another person in the past.) The State noted Wells' actions were not provoked by his victims and argued that "insignificant imprisonment term[s] would depreciate the seriousness of these crimes, [and] promote disrespect for the law."

Wells' counsel provided some background as to Wells which counsel believed was "critically important in explaining how we arrive here." Counsel noted that Wells comes from a family with divorced parents (for which Wells blames himself) and alcoholism. After his grandfather passed away, Wells had a "downhill spiral" and drank more. Later, Wells was in a car

accident with some friends; he was not the driver, but was the first to discover one of his friends had been killed in the accident. Rather than seek help through counseling, Wells continued to drink. Counsel stated:

> [A]ll of these things are building up inside of [Wells] and it culminated in what we are here for today; an incident that was alcohol-fueled and . . . was the result of alcohol and anger . . . and just a lot of problems that hadn't been addressed that should have been addressed earlier.

Counsel argued that Wells did not show up looking to use his guns as weapons, but, rather, he was "shooting trap with these kids." Counsel stated, "I don't think it would have happened but for the alcohol, and but for the fact that they were at a shooting range with guns." Counsel noted that Wells went directly from jail to residential treatment and completed that program. Further, Wells "stepped up to his obligations" to his child. Counsel asked the district court to order a sentence of probation.

Wells spoke in his own behalf and apologized to "all you guys and families." He also recounted his upbringing, his grandfather's passing, the car accident he was in, and how he coped by drinking alcohol. He stated he was glad he went to treatment following this incident because "[i]t needed to happen."

The district court stated that it had considered the relevant sentencing factors. The court acknowledged that Wells was present when his codefendant was sentenced. The court added:

> These are the most difficult kind of cases for me as a Judge. And, I understand that you had some difficulties that maybe not every kid has to deal with, but there's something going on with you where your sorrow is transferred to anger and violence . . . . That's something that . . . the public needs to be protected from. . . . Here you're at a party, you want to fight these people, I still don't have a real good reason as to why you wanted to fight them. . . .

[T]hey could not have done more to avoid any confrontation with you, yet you persisted while they were at the party trying to fight them. You had to be held back. They escape you once, you track them down again. . . . [D]runk or not, that is not normal behavior . . . .

The court also questioned the reason Wells was carrying around tactical weapons and high-capacity magazines, noting that it was "one thing" to have a shotgun if they were trapshooting. Wells stated that the tactical rifle was a shotgun and that he brought it for trapshooting. The court also noted that Wells forced the victims into different vehicles at gunpoint and threatened them and that if B.B. would not have shown up to diffuse the situation "who knows what could have happened"; but "instead of thanking [B.B.,] [Wells] and . . . Vanderheiden assault[ed] him, too, at gunpoint." The court found that Wells was not a good candidate for probation and sentenced him to 5 to 10 years' imprisonment on count I (possession of a firearm during the commission of a felony), 5 to 10 years' imprisonment on count II (kidnapping), 3 years' imprisonment on count III (terroristic threats), 1 year's imprisonment on count IV (second degree false imprisonment), 1 year's imprisonment on count V (second degree false imprisonment), 1 year's imprisonment on count VI (third degree assault), and 6 months' imprisonment on count VII (criminal mischief). The sentences in counts II through VII were to be served concurrently with each other, but consecutively to count I. Wells was given credit for 4 days' time served. Additionally, Wells was ordered to pay restitution in the amount of $606.94 to W.F. and $343.86 to C.H.; restitution was to be paid "jointly and severally with . . . Vanderheiden within 2 years of [Wells'] final release date from imprisonment."

### COUNTS I AND II

Wells was convicted of possession of a firearm during the commission of a felony (count I) and kidnapping (count II), each a Class II felony. A Class II felony is punishable by

1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105(1) (Reissue 2016). The district court sentenced Wells to 5 to 10 years' imprisonment for possessing a firearm during the commission of a felony and 5 to 10 years' imprisonment for the kidnapping, with the sentences to be served consecutively. His sentences were within the statutory range. However, Wells argues the sentences constituted an abuse of discretion "when considered in the context of Wells' background; his relatively minor and non-violent criminal record; the unique factual circumstances that led to the presence of the firearms; and the significantly harsher punishment imposed upon Wells in relation to . . . Vanderheiden." Brief for appellant at 10. We note that Vanderheiden pled no contest to and was convicted of the same charges as Wells and that Vanderheiden's sentences were the same as Wells' sentences, except that Vanderheiden was sentenced to 3 to 10 years' imprisonment for kidnapping rather than 5 to 10 years' imprisonment. See *State v. Vanderheiden*, No. A-19-279, 2019 WL 3934770 (Neb. App. Aug. 20, 2019) (selected for posting to court website). Having considered the relevant factors in this case, we find that Wells' sentences on counts I and II were not excessive or an abuse of discretion and that his sentences are therefore affirmed. See *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018) (sentence imposed within statutory limits will not be disturbed on appeal absent abuse of discretion by trial court; it is within trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively).

## COUNT III

[4] Wells was convicted of one count of terroristic threats (Count III), a Class IIIA felony. He was sentenced to 3 years' imprisonment. A Class IIIA felony is punishable by up to 3 years' imprisonment and 18 months' post-release supervision, a $10,000 fine, or both; there is no minimum sentence of imprisonment, but there is a minimum of 9 months'

post-release supervision if imprisonment is imposed. See § 28-105. However, a person sentenced to imprisonment for a Class II felony and sentenced concurrently or consecutively to imprisonment for a Class IIIA felony shall not be subject to post-release supervision. See § 28-105(6). Additionally, Neb. Rev. Stat. § 29-2204.02(4) (Reissue 2016) provides in relevant part that for any sentence of imprisonment for a Class IIIA felony for an offense committed on or after August 30, 2015, imposed consecutively or concurrently with a sentence of imprisonment for a Class II felony, the court shall impose an *indeterminate* sentence within the applicable range in § 28-105 that does not include a period of post-release supervision. See, also, *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018) (indeterminate sentence is minimum term and maximum term or range of time for which defendant is to be incarcerated, even if minimum and maximum number are same).

The district court sentenced Wells to 3 years' imprisonment for making terroristic threats, with the sentence concurrent with count II, but consecutive to count I (both Class II felonies). Having considered the relevant factors in this case, we find that Wells' sentence on count III was not excessive. However, as noted by the State, the sentence on count III needed to be an indeterminate sentence pursuant to § 29-2204.02(4), because Wells was also sentenced on the two Class II felonies; the court's imposition of a determinate sentence, rather than an indeterminate sentence, on count III constitutes plain error. Given this plain error, we vacate Wells' sentence for his conviction on count III and remand that count for resentencing. See *State v. Thompson*, 301 Neb. 472, 919 N.W.2d 122 (2018) (finding plain error and vacating sentences and remanding cause for resentencing where sentences did not comply with § 29-2204.02(4)). See, also, *State v. Vanderheiden, supra*.

### COUNTS IV THROUGH VII

A similar issue exists with respect to the sentences imposed on the four misdemeanor counts. Wells was convicted of two

counts of second degree false imprisonment, each a Class I misdemeanor (counts IV and V); one count of third degree assault, a Class I misdemeanor (count VI); and one count of "Criminal Mischief $500-$1,500," a Class II misdemeanor (count VII). A Class I misdemeanor is punishable by up to 1 year's imprisonment, a $1,000 fine, or both. See Neb. Rev. Stat. § 28-106 (Reissue 2016). And a Class II misdemeanor is punishable by up to 6 months' imprisonment, a $1,000 fine, or both. See § 28-106.

[5] Ordinarily, a sentence of imprisonment for a misdemeanor is served in the county jail, but when the sentence is to be served concurrently or consecutively with a felony conviction and the combined sentences total more than 1 year, the misdemeanor sentence may be served under the jurisdiction of the Department of Correctional Services. See § 28-106(2). When a sentence for a misdemeanor is imposed consecutively or concurrently with sentences for felony convictions, the felony classifications will dictate whether the misdemeanor sentence should be a determinate or indeterminate sentence. Section 29-2204.02(5) states:

> For any sentence of imprisonment for a misdemeanor imposed consecutively or concurrently with a sentence of imprisonment for a Class III, IIIA, or IV felony for an offense committed on or after August 30, 2015, the court shall impose a determinate sentence within the applicable range in section 28-106 unless the person is also committed to the Department of Correctional Services in accordance with section 29-2204 for (a) a sentence of imprisonment for a Class III, IIIA, or IV felony committed prior to August 30, 2015, or (b) a sentence of imprisonment for a Class I, IA, IB, IC, ID, II, or IIA felony.

In this case, the misdemeanor sentences were imposed concurrently with count III (terroristic threats, a Class IIIA felony), which ordinarily would have called for determinate sentences. However, as noted above, § 29-2204.02(5) provides an exception to the determinate sentences, because

Wells was also committed to the Department of Correctional Services for sentences of imprisonment on his convictions for his Class II felonies.

The district court sentenced Wells to determinate sentences of 1 year's imprisonment for each count of second degree false imprisonment and for the third degree assault, and it sentenced Wells to 6 months' imprisonment for the criminal mischief. The misdemeanor sentences (counts IV, V, VI, and VII), along with count II (Class II felony) and count III (Class IIIA felony), were to run concurrently with each other but consecutive to count I (Class II felony). Having considered the relevant factors in this case, we find that Wells' sentences on counts IV through VII were not excessive. However, the sentences on counts IV through VII needed to be indeterminate sentences pursuant to § 29-2204.02(5), because Wells was also sentenced on a Class IIIA felony and two Class II felonies; the court's imposition of determinate, rather than indeterminate, sentences on counts IV through VII constitutes plain error. Given this plain error, we vacate Wells' sentences for his convictions on counts IV through VII and remand those counts for resentencing. See *State v. Thompson*, 301 Neb. 472, 919 N.W.2d 122 (2018). See, also, *State v. Vanderheiden*, No. A-19-279, 2019 WL 3934770 (Neb. App. Aug. 20, 2019) (selected for posting to court website).

## CONCLUSION

For the reasons stated above, we affirm the sentences imposed on Wells as to counts I and II. However, we find plain error as to the sentences on the remaining counts. Thus, we vacate the sentences imposed on counts III through VII, and we remand the matter to the district court for resentencing on counts III through VII in accordance with § 29-2204.02(4) and (5).

Affirmed in part, and in part vacated
and remanded for resentencing.